O’NIELL, J.
In 1910 article 229 of the Constitution of 1898, authorizing the Legislature to levy a license tax on trades, professions, vocations, and callings (provided the amount of such tax should be graduated), was amended by authorizing the Legislature to levy a license tax on those engaged in the business of severing natural resources, such as timber and minerals, from the soil or water. The amendment provided that the amount of the license tax to be imposed on those engaged in the business of severing natural resources from the soil or water might be either graduated or fixed according to the quantity or value of the product at the place where severed. The amendment was retained as the second paragraph of article 229 in the Constitution of 1913.
Pursuant to the constitutional amendment, the Legislature adopted Act No. 209 of 1912, levying an annual license tax of one-half of 1 per cent, of the gross value of the total production, on every person, firm, association, or corporation engaged in the business of severing natural products, including all forms of timber, turpentine, and minerals, including oil and gas, sulphur, and salt, from the soil. The Legislature excepted from the gross value of the production on which the license tax is computed the royalty interest accruing to the owner of the land. See State v. Stiles, 137 La. 540, 68 South. 947.
In 1914 the Legislature adopted Act No. 296, authorizing the police juries of the several parishes to levy an annual license tax, not to exceed the amount levied by the state, on each person, association, firm, or corporation pursuing the business of severing minerals, including oil, gas, sulphur, and salt, from the soil.
On the 7th of April, 1915, the police jury of the parish of Red River adopted an ordinance levying a license tax of one-half of 1 per cent, of the gross value of the total production (less the royalty interest thereon) upon each person, association, firm, or corporation pursuing the business of severing minerals, including oil, gas, sulphur, salt, and water from the soil.
The plaintiff is engaged in the production of oil and gas from wells in the parish of Red River, and was required by the tax collector of that parish, acting under the ordinance of the police jury, to pay a license tax of $368.32. The plaintiff paid the license tax under protest and instituted this suit to recover the amount and to have the ordinance of the police jury and the Act No. 296 of 1914 declared unconstitutional, null, and void. From a judgment rejecting its demand, the plaintiff has appealed.
[1, 2] It is contended by the plaintiff that the Act No. 296 of 1934, and the ordinance of the police jury enacted in pursuance thereof, are unconstitutional and invalid because they exempt the royalty interest from the payment of the license tax and thereby discriminate against the remaining interest of those engaged in severing miner'als from the soil. It is contended that the statute and the ordinance thus violate article 225 of the Constitution, which provides that taxation shall be equal and uniform throughout the territorial limits of the authority levying the tax, and that all property shall be taxed in proportion to its value, to be ascertained as directed by law. It is contended that the statute, and the ordinance enacted in pursuance thereof, also violate the same article of the Constitution, as well as the spirit and the letter of the second paragraph of article 229, by imposing the license tax only on those pursuing the busi *45 ness of severing minerals, including oil, gas, sulphur, and salt, from the soil, and thereby exempting those engaged in severing other natural resources, such as timber, from the soil. Hence it is contended that the statute, and the ordinance enacted in pursuance thereof, adopt an arbitrary and unfair classification, and discriminate against those pursuing the business of severing minerals, and in favor of those engaged in the business of severing timber from the soil, and that the said statute and the said ordinance therefore violate the Fourteenth Amendment of the Constitution of the United States and the second article of the Constitution of the state of Louisiana, by depriving the plaintiff of his property without due process of law, and that the said statute and ordinance deny the plaintiff the equal protection of the laws.
The requirement of article 226 of the Constitution, that taxation shall be equal and uniform throughout the territorial limits of the authority levying the tax and that all property shall be taxed in proportion to its value to be ascertained as directed by law, has no application to a license tax. Article 229 provides that the amount of a license tax shall be graduated. The amendment of that article of the Constitution of 1913 makes an exception of the license tax to be imposed on those engaged in the business of severing natural resources, such as timber and minerals, from the soil, and provides that the amount of that particular license tax may be either graduated or fixed according to the quantity or value of the product. In support of the contention that article 225 of the Constitution applies to license taxes, as well as property taxes, the learned counsel for the plaintiff refers us to the cases of State v. O’Hara, 36 La. Ann. 93, Parker, Tax Collector, v. North British & Mercantile Insurance Co., 42 La. Ann. 428, 7 South. 599, and Swords, Tax Collector, v. Baillio, 105 La. 328, 29 South. 942. The decisions referred to do not support the plaintiff’s contention. In State v. O’Hara the defendant resisted the payment of a license tax for conducting a variety performance, on the ground that the license tax was not graduated. The only graduation of the license tax in the statute was that the license was fixed at $1,000 in cities having a population exceeding 25,000, and at $500 in cities and towns having less population. It was held that, as the Constitution had not laid down a rule for graduating license taxes, the Legislature might adopt any rational method, and that the graduation made in the statute in question was a sufficient compliance with the requirement of the Constitution. In the next case cited, Parker v. Insurance Co., it was said that the Constitution contemplated two kinds of taxes, property taxes and license taxes; that a tax imposed upon the capital employed by a foreign insurance company was a property tax, and was governed by all the constitutional requirements and limitations applicable to the taxing power. That decision can have no application here, since it is conceded by the learned counsel for the plaintiff, and could not well be denied, that the tax in question here is' a license tax. In the third case cited, Swords, Tax Collector, v. Baillio, the only issue presented and decided was that a local or special statute, exempting the residents of the town of Washington from the payment of parochial licenses, was not a legitimate exercise of the authority conferred by the last paragraph of article 229 of the Constitution, authorizing the General Assembly to provide by general laws that municipalities levying license taxes equal in amount to those levied by police juries for parochial purposes should be exempt from the payment of such parochial licenses. The provision of the Constitution that was violated by the statute in question is a clause in article 48, for *47 bidding the General Assembly to pass any local or special law granting to any corporation any special or exclusive right, privilege, or immunity. The case did not furnish an occasion for holding, and it was not held, that the requirement of article 225 of the Constitution, that taxation shall be equal and uniform throughout the territorial limits of the authority levying the tax, applies to a license tax.
The second paragraph of article 229 of the Constitution does not require that the Legislature shall impose a license tax upon those engaged in the business of severing timber and minerals from the soil. It provides that those engaged in the business of severing natural resources, such as timber and minerals, from the soil, may be rendered liable to a license tax, from which it follows that the Legislature might have imposed the license tax only upon those engaged in the business of severing timber, or only upon those engaged in severing minerals from the soil. In the Act No. 209 of 1912 the Legislature imposed the license tax upon those engaged in severing timber, as well as upon those engaged in severing minerals, from the soil. But that act did not require the Legislature to authorize police juries to levy a license tax for parochial purposes upon those engaged in the business of severing timber from the soil, when the Legislature authorized police juries to levy a license tax upon those engaged in severing minerals from the soil. The argument that the Legislature could not authorize police juries to levy a license tax on the business of severing minerals from the soil, without at the same time authorizing them to levy the same license tax on the business of severing timber from the soil, or that the police juries, under such authority, could not levy the license tax on the one business without levying the same tax on the other, is not supported by authority or reason. There is a great difference between the timber and the mining industries of this state. They are in such different classes that it is not an arbitrary classification or discrimination to impose a license tax upon the one business without imposing it upon the other.
There was no arbitrary discrimination in exempting from the license tax the share of minerals due to the landowner as a royalty. The landowner is not engaged in tbe business of severing minerals from the soil merely because he receives a part of the production as a royalty. In the case of State v. Stiles, 137 La. 540, 68 South. 947, it was held that the amendment to article 229 of the Constitution did not authorize the levying of a license tax on the landowner or royalty owner not engaged in the business of severing the natural resources from the soil. That is why the ordinance in question does not attempt to levy the tax on the interest of the landowner or royalty owner not engaged in the business of severing minerals from the soil.
[3] The constitutional right to the equal protection of the laws means that every one is entitled to stand before the law on equal terms with, to enjoy the same rights as belong to, and to bear the same burdens as are imposed upon, others in a like situation. Railway Co. v. Greene, 216 U. S. 400, 30 Sup. Ct. 287, 54 L. Ed. 536, 17 Ann. Cas. 1247. The ordinance in question does not deprive the plaintiff of his constitutional right to the equal protection of the laws.
The judgment appealed from is affirmed, at the cost of the appellant.