**OHIO OIL CO. v. McFARLAND, Supervisor of Accounts.**

District Court, E. D. Louisiana, New Orleans Division. September 17, 1928.

No. 19129.

R. L. Benoit, J. S. Atkinson, Blanchard, Goldstein & Walker, Pugh, Grimmet & Boatner, and Thigpen, Herold, Lee & Cousin, all of Shreveport, La., for complainant.

Percy Saint, Atty. Gen., M. M. Irwin, Asst. Atty. Gen., and Huey P. Long, of Shreveport, La., for respondent.

Before FOSTER, Circuit Judge, and ESTES and DAWKINS, District Judges, as a statutory court.

DAWKINS, District Judge. Complainant, a citizen of the state of Ohio, attacks the validity of Act No. 5 of the Legislature of Louisiana, passed at its 1928 session, levying severance taxes upon natural resources, in so far as the same applies to crude oil or petroleum. The supervisor of public accounts, who is charged by the act with the duty of collecting the taxes, is made party defendant.

Complainant alleges that said act discriminates against and denies to it equal protection under the law, in violation of the Fourteenth Amendment to the federal Constitution, for the following reasons:

"(a) Because the burden laid by said act upon the production of oil by your complainant from the fields in which it operates in the state of Louisiana is grossly in excess of that laid upon and paid by producers of oil in other fields in the state of Louisiana.

"(b) Because the burden laid by the said act upon the production of oil by other persons and corporations engaged in identically the same occupation, and under the same circumstances, is made by said act to vary according to arbitrary standards, so that the occupation of complainant is subjected by said act to a burden of taxation more than twice

as great as that of other persons engaged in identically the same occupation.

"(c) Because the standard fixed in said act, levying the severance tax according to the gravity of the product severed, results in gross and unreasonable discrimination, in that such standard entirely ignores the market value of the oil produced, which varies widely in the different oil fields of the state of Louisiana; the net result thereof being to impose upon the oil produced by complainant a burden grossly excessive and discriminatory as compared with that laid by the statute upon oil produced from other fields in the state of Louisiana.

"(d) Because the attempted classification of oil for the purpose of taxation in the said statute, to wit, that of gravity, is wholly arbitrary, has no reasonable relation whatever to any ground of difference having a fair and substantial relation to the value of oil produced in the various fields of the state of Louisiana, and results in grossly discriminatory treatment as against complainant with respect to other persons similarly circumstanced.

"(e) That said Act No. 5 of 1928 discriminates arbitrarily in favor of producers of oil in South Louisiana and against producers of oil in North Louisiana; that the burden imposed by it upon the business of complainant and other producers of oil in North Louisiana is grossly excessive and discriminatory, as compared with the burden imposed by it upon the production of oil in South Louisiana; and

"(f) That said act is based upon discrimination of a most unusual character, which particularly operates against this complainant, in that under the said statute it is compelled to pay a tax in respect of oil produced by it, the burden of which is grossly in excess of that paid by other producers of oil of identically the same gravity."

Complainant further charges that the said act is void, for the reason that "it does not purport to levy a severance tax predicated upon either the quantity or the value of the product at the time of the severance, and therefore violates section 21 of article 10 of the Constitution of the state of Louisiana."

Respondent has moved to dismiss, upon the ground (a) that this court is without jurisdiction rationæ materiæ; (b) the suit is premature; and (c) the bill does not disclose a cause or right of action.

At the same time respondent answered, admitting formal allegations, but denying the charges of discrimination, as well as the material allegations of fact upon which the conclusions of law are based. He further admitted that he would proceed to collect the taxes due under the act, which will accrue for the first quarter ending September 1st, and that the complainant is required to make its return thereon within 30 days following, or by October 1, 1928.

In direct contradiction to the allegations of the bill respondent avers:

"That while the said state of Louisiana is not required to particularly respect classifications on basis of value, that, however, as a rule, to which there is slight, if any, exception, the gravity of oil severed from the soil is almost wholly controlling on the question of its value."

As an example, there is copied from the Oil Weekly, the posted prices for oil in the Homer, Haynesville, Caddo, Eldorado, De Soto, Crichton, and Cotton Valley oil fields of the state of Louisiana, as of May 25, 1928, which are prices offered by the said plaintiff company, et al., as of May 25, 1928, to wit:

| | |
|---|---|
| Below 28 gravity | $ .91 |
| 28 to 28.9 gravity | .96 |
| 29 to 29.9 gravity | 1.01 |
| 30 to 30.9 gravity | 1.06 |
| 31 to 31.9 gravity | 1.11 |
| 32 to 32.9 gravity | 1.16 |
| 33 to 33.9 gravity | 1.19 |
| 34 to 34.9 gravity | 1.22 |
| 35 to 35.9 gravity | 1.25 |
| 36 to 36.9 gravity | 1.28 |
| 37 to 37.9 gravity | 1.31 |
| 38 to 38.9 gravity | 1.34 |
| 39 to 39.9 gravity | 1.37 |
| 49 to 49.9 gravity (s/b 40 to 40.9) | 1.40 |
| 41 to 41.9 gravity | 1.43 |
| 42 to 42.9 gravity | 1.46 |
| 43 to 43.9 gravity | 1.49 |
| 44 to 44.9 gravity | 1.52 |
| 45 to 45.9 gravity | 1.55 |
| 46 to 46.9 gravity | 1.58 |
| 47 to 47.9 gravity | 1.61 |
| 48 to 48.9 gravity | 1.64 |
| 49 to 49.9 gravity | 1.67 |
| 50 to 50.9 gravity | 1.70 |
| 51 to 51.9 gravity | 1.73 |
| 52 and above | 1.76 |

### Motion to Dismiss.

Nothing has been submitted to sustain the contention that the court is without jurisdiction of the subject-matter. It appears beyond question that the amount involved will exceed $3,000, and the bill assails the validity of the sections of the statute in question under the Fourteenth Amendment to the federal Constitution. There is also diversity of citizenship, complainant being a citizen of Ohio and respondent of this state. We therefore see no basis for this contention. Neither do we think there is anything in the claim of prematurity, for the reason that it is admitted

the respondent will promptly proceed under the statute to enforce collection of the tax, which will be payable about October 1st. A litigant does not have to wait until the alleged injury has been accomplished, but may have relief by injunction, if the danger is imminent, as it appears to be in this case. Pierce v. Society of Sisters, 268 U. S. 510, 45 S. Ct. 571, 69 L. Ed. 1070, 39 A. L. R. 468; Pennsylvania v. West Virginia, 262 U. S. 592, 43 S. Ct. 658, 67 L. Ed. 1117, 32 A. L. R. 300.

The question of whether the bill discloses a cause of action will be disposed of along with the merits of the application for a preliminary injunction.

### On the Merits.

The state Constitution deals specifically with severance taxes, and in section 21 of article 10 (Constitution 1921) provides:

"Section 21. Taxes may be levied on natural resources severed from the soil or water, to be paid proportionately by the owners thereof at the time of severance. Such natural resources may be classified for the purpose of taxation and such taxes predicated upon either the quantity or value of the product at the time and place where it is severed. No severance tax shall be levied by any parish or other local subdivision of the state.

"No further or additional tax or license shall be levied or imposed upon oil or gas leases or rights, nor shall any additional value be added to the assessment of land, by reason of the presence of oil or gas therein or their production therefrom: Provided, that until the Legislature shall have enacted laws carrying into effect the provisions of this section, all existing laws relating to severance taxes or licenses, and to the assessment and taxation of land producing oil or gas shall be and remain in full force and effect. Notwithstanding any legislative appropriation heretofore made or any allocation in this Constitution made, the Legislature shall allocate a portion of the severance tax on oil or gas not less than one-fifth of the amount collected therein to the parish from within which such tax is collected; provided, that the amount thus allocated shall not exceed two hundred thousand ($200,000) dollars, to any parish in any one year.

"The Legislature shall provide for the distribution of the funds allocated to the parishes under this provision among the governing authorities having jurisdiction over the territory from within which such resources are severed and tax collected."

Similar taxes have been imposed under provisions of previous Constitutions and statutes, and the Legislature at its regular session in 1922, following the adoption of the Constitution of 1921, passed Act No. 140 of that year, imposing a tax of 3 per cent. upon the value of all oil or other natural resources severed from the soil or water. However, at the recent session of the Legislature, in pursuance to a policy advocated by the present Governor in his campaign for election, Act No. 5 of 1928 was passed, amending sections 2 and 5 of the said act, which we quote in so far as are pertinent, as follows:

"Section 2. Taxes on natural resources severed from the soil or water, as levied by section 1 of this act, shall be predicated on the quantity severed, and shall be paid at the following rates: * * *

"(7) a. On oil of 28 gravity and below, four (4) cents per barrel of 42 gallons.

"b (1). On oil above 28 gravity and not above 31 gravity, four and one-fourth (4¼) cents per barrel of 42 gallons.

"b (2). On oil above 31 gravity and not above 32 gravity, five (5) cents per barrel of 42 gallons.

"(c) On oil above 32 gravity and not above 36 gravity, eight (8) cents per barrel of 42 gallons.

"(d) On oil above 36 gravity and not above 43 gravity, ten (10) cents per barrel of 42 gallons.

"(e) On oil above 43 gravity, eleven (11) cents per barrel of 42 gallons."

It would appear reasonably clear from the above that, in so far as the state is concerned, under the Constitution, the Legislature may impose severance taxes based either upon quantity or value. In other words, it might, in its discretion, have continued to exact a percentage of the price received for the oil, or it might have, if we understand the view of the complainant correctly, imposed a flat rate of so much per unit or barrel, just as was done upon coal, salt, stone, gravel, etc., where the tax is fixed at so many cents per ton. It is contended, however, that the Legislature could not classify the different grades of oil using gravity as a basis, for the reason that there is no reasonable relation between gravity and price.

The tax in question undoubtedly falls within the category of an excise or privilege tax, as distinguished from an ad valorem or property tax. It is exacted for the privilege of pursuing the business of extracting oil from the earth, and is not affected by general constitutional requirements for equality and uniformity. Gulf Refining Co. v. McFarland, 154 La. 251, 97 So. 433, and authorities

cited. Hence the Legislature could, if it saw fit, impose the tax upon the severance of one or more of such resources falling within distinct classes, without doing so as to other classes, so long as it applies to all who engaged in the same class of business. Standard Oil Co. of Louisiana v. Police Jury of Red River Parish, 140 La. 42, 72 So. 802. For instance, we know of no reason why the lawmaking body could not exact a license tax of lawyers, without doing so as to doctors or other professional men of distinct classes. The statute under discussion classifies timber according to species, and imposes the tax at so much per thousand feet, at different rates upon cypress, pine, gum, etc. The rate is fixed at a higher or lower amount, substantially upon the value of the different kinds of timber. It occurs to us that such a classification as to timber is much fairer than a flat rate upon all kinds and grades, when, as a matter of common knowledge, the values vary so widely. It would be only a step further in the same direction, and we think within the same principle, if instead the tax as to timber had been classified according to the well-recognized grades of lumber in the yellow pine and hardwood markets. Such a method would have been even more accurate and equitable to the taxpayer, and would more nearly approximate a tax based upon a percentage of the sale price than a flat rate of so much a thousand feet imposed upon all timber. We do not find anything in the state Constitution, nor have we been referred to any provision of the federal organic law, which limits or restrains the power of the Legislature when acting within those reasonable bounds. Of course the state Constitution does not, like the federal Constitution, grant any power to the legislature but operates in the other direction, that is, as a limitation upon the lawmaking body, and all powers not limited or withheld rest in the legislative department of the state. 12 C. J. par. 745, verbo "Constitutional Law," § 167.

■ The issue in this case, as we see it, reduced to its final analysis, is largely one of fact; i. e., is there any reasonable basis for the classification by the Legislature of crude oil according to gravity for the purpose of this species of taxation? The application for the preliminary injunction was heard, of course, upon ex parte affidavits, and, in deciding the questions of fact necessary to a determination of the right to the writ, we may not only consider such proofs, but any other fact which is common knowledge or generally known to the public.

On behalf of complainant a number of affidavits have been submitted as to the various elements entering into the value of oil. Among these may be mentioned specifically that of C. D. Keen, who states that he is a mining engineer and has pursued the business of producing and refining crude oils since his graduation from the Technical University of Delft, Holland, in 1909. In substance he states:

That gravity "is simply the relation between volume and weight," applied conversely to that of ordinary substances—that is, while the standard of comparison is the same as to all, to wit, an equal volume of water, the gravity of oil is rated upward as its weight diminishes. That there are two standards of estimating or stating the gravity of crude oil: (a) Beaume gravity, according to the (United States) Bureau of Standards; and (b) Beaume gravity Tagliabue. That the latter is generally spoken of as Beaume, while the former is usually spoken of as "A. P. I." That, in determining gravity, the temperature at which the test is made is important, but "in the oil industry, it is usually 60° Fahrenheit." That the price of crude oil is the sum paid by the pipe line at the mouth of the well. That pipe line companies publish their tariffs in much the same manner that railroad companies publish their rates, and disclose from day to day prices paid for the different grades of oil in the different fields, which are known as "posted pipe line prices," but are generally referred to in the oil industry as the "market price or value of the oil at the well." That various factors affect the price paid, to wit, supply and demand, location of the field with respect to pipe lines, railroads and refineries, water competition, freight rates, etc., as well as another factor, "which is largely controlling as between different kinds of oil," the use to which the oil can be put; that is, the products that can be manufactured from it and the market therefor. The witness then proceeds to compare and analyze oils having a paraffine with those possessing an asphalt base. The net result is that he states the former becomes more valuable as gravity rises, for the reason that greater quantities of the higher priced products of gasoline, etc., can be extracted, while the latter increases in value as gravity decreases, because it contains, in the natural state, very little gasoline, but produces a larger quantity of lubricating oil, for which it is chiefly valued. Further, that there is no difference between the cost of producing light and heavy crude, except as to such incidental factors as the depth of the wells, location, etc.; that recent discoveries in the process of refining, known as "cracking," have made it possible to extract gasoline and the lighter

products from the heavy crudes, which formerly could not be used for this purpose, and which has naturally added to the value of these oils, although the gravity has, of course, remained the same.

Affidavits of the other witnesses are similar in substance to that of Mr. Keen.

On behalf of the respondent there was offered the answer, supported by his own affidavit, together with one by the Governor, the substance of which is that the prices of crude oil in the several fields of Louisiana are quoted entirely by gravity. Counsel for complainant has moved to strike the affidavit of the Governor from the record, for the reason that it is based upon hearsay and is the opinion of the witness. This objection we think goes to the effect, rather than the admissibility, of the affidavit. In the answer it is alleged, and supported by the oath of respondent, that the prices of crude oil in the Homer, Haynesville, Caddo, El Dorado, De Soto, Crichton, and Cotton Valley oil fields, posted and offered by the complainant company as of May 25, 1928, were as follows:

| | |
|---|---|
| Below 28 gravity | $ .91 |
| 28 to 28.9 gravity | .96 |
| 29 to 29.9 gravity | 1.01 |
| 30 to 30.9 gravity | 1.06 |
| 31 to 31.9 gravity | 1.11 |
| 32 to 32.9 gravity | 1.16 |
| 33 to 33.9 gravity | 1.19 |
| 34 to 34.9 gravity | 1.22 |
| 35 to 35.9 gravity | 1.25 |
| 36 to 36.9 gravity | 1.28 |
| 37 to 37.9 gravity | 1.31 |
| 38 to 38.9 gravity | 1.34 |
| 39 to 39.9 gravity | 1.37 |
| 49 to 49.9 gravity | 1.40 |
| (s/b 40 to 40.9) | |
| 41 to 41.9 gravity | 1.43 |
| 42 to 42.9 gravity | 1.46 |
| 43 to 43.9 gravity | 1.49 |
| 44 to 44.9 gravity | 1.52 |
| 45 to 45.9 gravity | 1.55 |
| 46 to 46.9 gravity | 1.58 |
| 47 to 47.9 gravity | 1.61 |
| 48 to 48.9 gravity | 1.64 |
| 49 to 49.9 gravity | 1.67 |
| 50 to 50.9 gravity | 1.70 |
| 51 to 51.9 gravity | 1.73 |
| 52 and above | 1.76 |

There was also attached to the affidavit of the Governor copies of the Oil Weekly, a journal devoted to the production of oil and gas, recognized by the trade and published at Houston, Tex., on August 17, 1928, and the Gas & Oil Journal, another periodical widely known to the trade, published at Tulsa, Okl., on August 16, 1928, quoting prices in the various fields of the country, including Louisiana, and in every instance increases in price are in exact relation to the rise in gravity—in fact, no other element is indicated for the difference.

It is not contended, as to the same kinds of oil (that is, those possessing the same base of paraffine or asphalt in the same proportion and relation), that there is any difference in value, except as affected by the incidental factors of location, transportation, depth necessary to drill, etc. Inasmuch as the tax upon oils within the same gravity class is the same, wherever produced in the state, complainant will pay the same rate of taxation as all other persons within those classes, whether the value increases with a higher or lower gravity. The burden of the complaint is that the oils produced in most of the fields of North Louisiana, where complainant operates, have a paraffine base, and are taxed at a higher rate as the gravity increases, while practically all of that produced in South Louisiana has an asphalt base, and must also pay a higher rate of taxation upon higher gravity; yet complainant is discriminated against because, notwithstanding the higher gravities in North Louisiana bring better prices, those in South Louisiana bring higher prices as the gravity falls. It would seem that a similar argument, but somewhat reversed, might be made on the part of the producers in South Louisiana; that is, while they get less money for the higher gravities, they are required to pay more taxes.

We think the proofs establish the fact that the prices of oil, as posted and paid in the several fields, are determined according to gravity, and, with the exception of that possessing an asphalt base, a comparatively small proportion of which is produced in North Louisiana, where complainant operates, the prices are increased as the gravity rises to the extent that practically twice as much is paid for the highest grades as for the lowest. So that gravity does appear to us to have some reasonable relation to the value of oil. This being true, and the tax in question being a license or excise tax, does it not in effect bear upon the taxpayer in a manner similar to license taxes upon mercantile businesses, which pay an increasing amount as the volume of their gross sales rises, and are classified or graded accordingly? And does it not also bear some semblance to the effect of an ad valorem tax, the amount of which increases with the value of the property?

If there is a reasonable basis for the classification, then the courts would not be justified in disturbing the manner or method used by the Legislature, unless it amounted to confiscation, clear discrimination or was wholly arbitrary. Section 21 of article 10 of the Constitution, which authorizes the levying of severance taxes, declares that: "Such natural resources may be classified for the pur-

pose of taxation and such taxes predicated upon either the quantity or value of the product at the time and place where it is severed." The Legislature has interpreted this power to classify as including the different grades of a particular resource, because of the recognized difference in value, and proceeded to levy a rate of taxation, varying according to the value of these grades. Is there anything in this language of the Constitution which justifies us in saying that it has not that power, or that the framers intended that such should not be done?

Under well-known rules of interpretation, which require that an act of the Legislature should not be struck down unless it is clearly in conflict with the organic law, and that the legislative department should be allowed a reasonable latitude in interpreting its own power under the Constitution, we cannot say that it has exceeded its power in this instance. Neither do we find basis for the contention that the law discriminates against the complainant, or denies to it that equal protection required by the Fourteenth Amendment to the federal Constitution. Of course, exact equality in taxation cannot and never will be attained. The best that can be done is to approximate it. Therefore, in levying these burdens, a very wide range of discretion must necessarily be exercised by the taxing authority. So long as it is done within reasonable bounds, the courts should not substitute their judgment for that of the lawmaking body. It is only when there is a clear discrimination against some one in a common class, or the classification is wholly arbitrary, that the judicial branch of the government may interfere. Southwestern Oil Co. v. Texas, 217 U. S. 114, 30 S. Ct. 496, 54 L. Ed. 688; Travelers' Insurance Co. v. Connecticut, 185 U. S. 371, 22 S. Ct. 673, 46 L. Ed. 949; Patton v. Brady, 184 U. S. 609, 22 S. Ct. 493, 46 L. Ed. 713; In re Wolverine Oil Company, 53 Okl. 24, 154 P. 362, L. R. A. 1916F, 141.

Our conclusion is that the application for preliminary injunction should be denied.