28 P.(2d) 889

FLYNN, WELCH & YATES, Inc., v. STATE TAX COMMISSION et al.

No. 3925.

Supreme Court of New Mexico.

Jan. 6, 1934.

Rehearing Denied Jan. 31, 1934.

E. K. Neumann, Atty. Gen., and Frank H. Patton, Asst. Atty. Gen., for appellants.

Hervey, Dow, Hill & Hinkle and J. D. Atwood, all of Roswell, and J. O. Seth and E. R. Wright, both of Santa Fé, for appellee.

SADLER, Justice.

The appellants, state tax commission, and Byron O. Beall, Prager Miller, and D. E. Rodriguez, constituting the personnel of said commission, upon this appeal seek to overthrow an injunction order issued against them by the district court of Santa Fé county restraining the enforcement of chapter 72 of the New Mexico Session Laws of 1933, commonly designated as the Severance Tax Law. The act, as shown by its title, purports to levy an "excise tax" upon oil and gas severed from

the soil of this state, provides for the collection of the tax, its distribution, stipulates penalties for the violation thereof, and declares it an emergency measure.

The appellee, a corporation, movant for the injunction below, by its complaint alleged itself to be the owner of eighteen producing oil wells in Eddy county, N. M. The complaint thus discloses that it will be injuriously affected by the enforcement of the act if, as it contends, the same is unconstitutional. The validity of the act is attacked in the complaint upon the ground that the measure is not, as its title would indicate, an excise tax, but, on the contrary, a property tax on oil and gas, and as such void because not levied in proportion to the value thereof. If this contention be correct, the judgment of the lower court should be affirmed.

It is also shown by the complaint that, within ninety days after adjournment of the eleventh state Legislature, which enacted said measure, a petition calling for a referendum upon said law bearing the signatures of 25 per cent. of the qualified electors of three-fourths of the counties in the state was filed in the office of the secretary of state, thereby, as appellee contends, suspending the operation of same pending a vote at the general election in November, 1934. If appellee be correct in this contention, the judgment of the lower court must likewise be affirmed.

The appellants interposed a demurrer which, so far as here material, is based upon the following grounds, to wit: (1) That the act assailed discloses on its face that it imposes an excise tax; (2) that the emergency declaration attached thereto stating it is necessary for the preservation of the public peace, health, or safety conclusively establishes said measure as one excluded from the referendum; (3) that the act itself discloses another ground of exemption from the referendum, in that it is one providing for the maintenance of the public schools.

The court overruled the demurrer, and, the appellants electing to stand upon the same, an order was entered restraining them from enforcing, or attempting to enforce, the provisions of the act assailed. It is from such order that this appeal is prosecuted.

■ We have already held in Todd v. Tierney, 38 N. M. 15, 27 P.(2d) 991, which opinion but recently has been handed down, that the filing with the secretary of state of a referendum petition bearing the required 25 per cent. of the signatures of the qualified electors of the state does not have the effect of suspending the operation of a law already in effect by reason of an emergency clause attached thereto, even though the law should be one subject to a referendum. In so far, therefore, as the judgment of the trial court enjoining the enforcement of said act may rest upon the conclusion that the act in question was suspended of effective operation by the filing of said petition, it is wanting in proper support to sustain it.

■ The result of the decision in Todd v. Tierney, supra, is that the question of the referable character of a given act is not determined the one way or the other by its designation as an emergency measure. Hence, if we should consider untenable the objection

urged against validity of the act upon constitutional grounds, it becomes apparent that the question of its referable character need not now be determined. We therefore pass immediately to a consideration of the constitutional question presented by appellee.

The law in question was enacted as House Bill No. 153, known as chapter 72, New Mexico Session Laws of 1933. It was approved March 8, 1933, and by virtue of the emergency declaration attached thereto became effective on such date and remains in effect, if constitutional. In other words, the filing of the referendum petition alleged in the complaint did not have the effect to suspend operation of the law.

The title under which the measure was passed is as follows: "An Act to Levy an Excise Tax Upon Oil and Gas Severed From the Soil of This State; Providing for the Collection Thereof; Providing for the Distribution of the Proceeds Thereof; Providing for Penalties for the Violation of This Act, and Declaring an Emergency."

If our decision of the matter were to be concluded by the legislative declaration in the title upon the nature of the tax, we might well rest from our labors at this point by holding it to be an excise tax and valid. But "the name by which the tax is described in the statute is, of course, immaterial. Its character must be determined by its incidents." Dawson v. Kentucky Distilleries & Warehouse Co., 255 U. S. 288, 41 S. Ct. 272, 274, 65 L. Ed. 638; Educational Films Corp. v. Ward, 282 U. S. 379, 51 S. Ct. 170, 75 L. Ed. 400; Gregg Dyeing Co. v. Query, 286 U. S. 472, 52 S. Ct. 631, 76 L. Ed. 1232, 84 A. L. R. 831. We therefore turn to an analysis of the body of the act for the purpose of ascertaining the nature of the tax imposed.

Sections 1 and 2 of the act read as follows:

"Section 1. That for the year 1933, commencing April 1, 1933, and for each subsequent year, taxes are hereby levied upon the oil and gas severed from the soil of this State.

"Such taxes shall be paid by the owner or proportionately by the owners thereof at the time of severance, and shall become due and payable quarterly as herein provided, and shall operate as a first lien on such oil and gas, which lien shall follow such products into the hands of third persons, whether in good or bad faith, and whether same shall be found in a manufactured or unmanufactured state.

"Sec. 2. Taxes, as levied by Section 1 of this Act, shall be predicated upon the quantities severed from the soil of this State, and shall be paid at the following rates:

"(a) (1) On oil of 28 gravity and below, two (2) cents per barrel of 42 gallons.

"(2) On oil above 28 gravity and not above 50 gravity, four (4) cents per barrel of 42 gallons.

"(3) On oil above 50 gravity, six (6) cents per barrel of 42 gallons.

"(b) (1) On gas, one-tenth (1/10) of one (1) cent per thousand cubic feet, measured at ten (10) ounce pressure."

Section 3 provides for quarterly collection of the tax imposed, and directs the distribution thereof.

Sections 4 and 5 provide:

"Sec. 4. Every person, firm, corporation or association of persons, severing oil and/or gas from the soil of this State shall, within fifteen (15) days after the expiration of each quarter annual period expiring, respectively, on the last day of March, June, September and December of each year, file with the State Tax Commission a statement under oath, on forms prescribed by said Commission, of the business conducted by such person, firm, corporation or association of persons, during the last preceding quarter annual period, showing the kind and gross quantity of gas and/or oil so severed or produced, the names of the owner or owners at the time of severance, the portion owned by each, the location of each place or places where same was severed from the soil, and such other and necessary information pertaining thereto as the State Tax Commission may require for the enforcement of this Act. At the same time of rendering such reports to the State Tax Commission, each person, firm, corporation or association of persons, shall concurrently file a duplicate thereof with the County Treasurer of the county where said gas and/or oil was taken or severed from the soil; and shall pay therewith a tax upon the gross quantity of such gas and/or oil severed, computed at the rate applying thereto as provided in Section Two (2) of this Act; Provided, however, that the gross quantity of oil and/or gas shall be computed as that total amount actually severed, less the amount thereof due the United States of America or the State of New Mexico, as the case may be, for and as royalty payments.

"Sec. 5. Except as otherwise provided in this Act, the making of such reports, and the payment of said taxes, shall be by those actually engaged in the operation of severing, whether it be the owner of the soil, or another severing from the soil of another, or the owner of any such gas and/or oil severing same from the soil of another.

"The reporting tax payer shall collect or withhold out of the value of the oil and/or gas severed, the proportionate parts of the total tax due by the respective owners of the severed products at time of severance."

The remaining sections of the act need not be set out or discussed in detail. In a general way they are largely concerned in furnishing assurance that the act of severance shall under no condition escape the tax into whosesoever hands the products, when severed, may pass; providing machinery for collection of the tax, and penalties for enumerated violations.

We are here asked to declare this act invalid upon constitutional grounds. A careful analysis of appellee's position narrows its challenge of the act to a single point; namely, that it violates N. M. Const. art. 8, § 1, reading: "Taxes levied upon tangible property shall be in proportion to the value thereof, and taxes shall be equal and uniform upon subjects of taxation of the same class."

The claimed violation consists, as appellee contends, in levying the tax not "in proportion to value" but per quantity. But not all taxes are required to be levied ad valorem. So appellee is put to the contention that this tax is upon the oil and gas as tangible prop-

erty rather than some intangible right or privilege. Thus arises what is made the determinative question, whether we have here a property tax or an excise.

In presenting its position before us, it chances that the state visualizes oil and gas production as a business and seeks to justify the tax as one upon the privilege of engaging in it. The appellee centers its attack upon that theory. Herein, we think, has appellee failed to appreciate the extent of the burden resting upon it. It is not for the state to fit this tax into some existing and known mould of excise taxation, or fail; it is for appellee to demonstrate it to be a tax on tangible property, or fail.

"The power of taxation is inherent in the state, and may generally be exercised through its Legislature without let or hindrance, except in so far as limited by the Constitution. * * *" Asplund v. Alarid, 29 N. M. 129, 219 P. 786, 789.

"Given a reasonable classification of subjects, the power of the Legislature to lay an excise tax is almost unlimited. * * *" George E. Breece Lbr. Co. v. Mirabal, 34 N. M. 643, 287 P. 699, 701, 84 A. L. R. 827.

Then what is an excise tax? And what is the constitutional concept of property tax in the requirement that it shall be laid ad valorem? In Patton v. Brady, 184 U. S. 608, 22 S. Ct. 493, 496, 46 L. Ed. 713, the United States Supreme Court quotes approvingly Mr. Cooley's definition of an excise as: "An inland impost levied upon articles of manufacture or sale, and also upon licenses to pursue certain trades, or to deal in certain commodities." See, also, for distinction between an excise and property tax, 1 Cooley on Taxation (4th Ed.) § 46; Id. vol. 4, § 1676.

The definition of Mr. Justice St. Paul, citing Patton v. Brady, in Gulf Refining Co. v. McFarland, 154 La. 251, 97 So. 433, 436, a case dealing with the Louisiana Severance Tax Act, of which ours is an adoption, is as follows:

"Any tax is an 'excise,' which is not a capitation tax, or a direct tax on land or personalty, considered as the *permanent fortune* of the individual taxed, and laid thereon solely by reason of ownership without regard to origin or to the actual or intended use to which it may be put; in other words, a perennial tax upon property as such." (Italics ours.)

This definition, while purporting to describe an excise, in thus stating what it is not, in our opinion actually defines what a property tax is, as the phrase "taxes * * * upon tangible property" is employed in our constitutional limitation, N. M. Const. art. 8, § 1. It so nicely describes the kind of tax which the Constitution contemplates in its requirement of levy ad valorem that argument is scarcely necessary to demonstrate that the tax here in question is something else.

The oil may remain underground forever as a part of the landowner's "permanent wealth" and of the state's permanent taxable resources, without being affected by this tax. The producer or severer, after once suffering the exaction, may hold it as long as he will without a recurrence of it. The tax is tied absolutely to the act or privilege of producing or severing. It is not imposed because of

ownership. It, of course, burdens ownership, but for that matter so does a sale, a use, or a consumption tax.

Such a definition as that of Mr. Justice St. Paul in Gulf Refining Co. v. McFarland, supra, is doubtless what this court had in mind in employing the phrase "taxes, in the proper sense of the word," in State v. Ingalls, 18 N. M. 211, 135 P. 1177, 1180. It sustains the distinction between taxes proper and assessments for benefits, justifying levies according to the front-foot rule or per acre. City of Roswell v. Bateman, 20 N. M. 77, 146 P. 950, L. R. A. 1917D, 365, Ann. Cas. 1918D, 426; Davy v. McNeill, 31 N. M. 7, 240 P. 482; In re Proposed Middle Rio Grande Conservancy District, 31 N. M. 188, 242 P. 683.

Our minds do not reject the idea that the lessee and the royalty owner, considered as participating in a joint enterprise, are both engaged in the business of producing or severing oil, and that the tax is therefore essentially occupational. Such a view, however, is not indispensable to sustaining the tax. For it may be considered occupational as to the lessee and another kind of tax as to the royalty owner. Unless found, as to one or the other, to be a tax upon tangible property, it need not be levied ad valorem, and is an excise.

One cannot read the tax decisions of the courts of last resort, state and federal, and fail to note an increasing resort for revenue to the occasion when the owner realizes upon the natural resources embraced within his land holdings, and by so doing depletes the taxable resources of the state.

"The tax provided for by the act is not a property tax, but rather an occupation license tax. Mid-Northern Oil Co. v. Walker, 65 Mont. 414, 211 P. 353; Norum v. Ohio Oil Co., 83 Mont. 353, 272 P. 534. The state in effect says to the producers: Your operations deplete the natural resources of the state, and to the extent that you remove from the earth the natural wealth with which nature has provided it, and to that extent impoverish it, you are required to pay a license tax for the use and benefit of the state, for the privilege of extracting such natural wealth. The tax provided is not, therefore, on metals, minerals, or mine products, but rather upon the business of producing metals or precious stones, based upon annual production." State v. State Board of Equalization, 93 Mont. 19, 17 P.(2d) 68, 72, 18 P.(2d) 804.

As supporting the view that such a tax is an excise, in the nature of a privilege tax, or occupational in character, may be cited: Oliver Iron Mining Co. v. Lord, 262 U. S. 172, 43 S. Ct. 526, 67 L. Ed. 929; Choctaw, O. & G. R. Co. v. Harrison, 235 U. S. 292, 35 S. Ct. 27, 59 L. Ed. 234 (construing Oklahoma statute); State v. Parker, 5 Ala. App. 231, 59 So. 741; Floyd v. Miller Lumber Co., 160 Ark. 17, 254 S. W. 450, 32 A. L. R. 811; Raydure v. Board of Supervisors, 183 Ky. 84, 209 S. W. 19; Swiss Oil Corp. v. Shanks, 208 Ky. 64, 270 S. W. 478, affirmed in 273 U. S. 407, 47 S. Ct. 393, 71 L. Ed. 709; Cumberland Pipe Line Co. v. Commonwealth, 228 Ky. 453, 15 S.W.(2d) 280; Standard Oil Co. v. Police Jury, 140 La. 42, 72 So. 802; Gulf Refining Co. v. McFarland, 154 La. 251, 97 So. 433, affirmed in 264 U. S. 573, 44 S. Ct. 402, 68 L. Ed. 856; Mid-

Northern Oil Co. v. Walker, 65 Mont. 414, 211 P. 353; Norum v. Ohio Oil Co., 83 Mont. 353, 272 P. 534; State v. State Board of Equalization, 93 Mont. 19, 17 P.(2d) 68, 18 P.(2d) 804; Producers' Oil Co. v. Stephens, 44 Tex. Civ. App. 327, 99 S. W. 157, 159; Texas Co. v. Stephens, 100 Tex. 628, 103 S. W. 481.

The author of the case note at 32 A. L. R. 827, appended to the report of the Arkansas case of Floyd v. Miller Lumber Co., supra, says: "According to the weight of authority a tax imposed on persons engaged in severing from the soil natural resources, such as timber, oil, natural gas, ore, or the like, based on the quantity or the value of the product thus severed, is valid. Such a tax is deemed a privilege or occupation tax, a proper exercise of the power to impose such taxes, and not within constitutional requirements relating to the imposition of property taxes."

As indicated by the author of the annotation, the weight of judicial authority views such a tax as an excise rather than a property tax. The constitutionality of such taxes, as shown by the cases cited, supra, is generally upheld, though uniformity of reasoning and conclusion is lacking. Hence the chief value of the decisions is in the principles laid down or recognized.

Appellee perhaps places greatest reliance on the cases of Eastern Gulf Oil Company v. Kentucky State Tax Commission (D. C.) 17 F.(2d) 394, Thompson v. McLeod, 112 Miss. 383, 73 So. 193, L. R. A. 1918C, 893, 898, Ann. Cas. 1918A, 674, 678, and Dawson v. Kentucky Distilleries & Warehouse Co.; 255 U. S. 288, 41 S. Ct. 272, 65 L. Ed. 638. The case first above

cited is the per curiam decision of a three judge federal District Court for the Eastern District of Kentucky. The opinion makes an exhaustive analysis of the two Kentucky statutes involved, viz., the 1917 act and the 1918 amendment. The case does not greatly aid appellee's contention. The federal court unhesitatingly pronounced the 1917 act "an occupational tax"; and it is that act rather than the 1918 act to which our own law in its incidents is similar. We therefore need not concern ourselves with the debate between the federal District Court and the Kentucky Court of Appeals as to whether the tax imposed by the 1918 act is an excise. Eastern Gulf Oil Co. v. Kentucky State Tax Commission, supra; Cumberland Pipe Line Co. v. Commonwealth, supra.

Thompson v. McLeod, supra, on its facts presents a strong analogy. It was there held by a divided court that an act levying "an annual privilege tax or occupation fee" upon persons engaged in the business of extracting turpentine from standing trees was a property tax and void for want of equality and uniformity. The majority opinion often has been criticized, as witness the remarks of Circuit Judge Gilbert of the Ninth Circuit Court of Appeals, speaking for that court in Northern Commercial Co. of Alaska v. Alaska, 289 F. 786, 787, where he said: "The reasoning is not convincing, and we incline toward the views expressed in the dissenting opinion in that case, that the tax was a tax on the business and not on property. This conclusion is sustained by decisions of the Supreme Court and of this court." See, also, comment on this case in Republic Iron & Steel Co. v. State,

204 Ala. 469, 86 So. 65 and Foster & Creighton Co. v. Graham, 154 Tenn. 412, 285 S. W. 570, 47 A. L. R. 971.

In Thompson v. McLeod the majority seem to have thought that an excise cannot be imposed upon the exercise of a natural right upon one's own property. An early Arkansas decision so held, deeming such tax "in derogation of the common right of acquiring, possessing and protecting property," and announcing "the principle * * * that the legislature may * * * prohibit or restrain * * * the use of any property * * * if deemed to be against good policy, or injurious to the public morals, but cannot tax as a privilege the exercise of a common right, which the very act of licensing admits, is neither immoral or injurious to the rights of others." See Washington v. State, 13 Ark. 752, and cases there reviewed. Largely upon this principle Mr. Justice Wood, dissenting in Floyd v. Miller Lumber Co., 160 Ark. 17, 254 S. W. 450, 32 A. L. R. 811, considered the Arkansas statute there in question as creating a property tax. The majority of that court, however, though greatly embarrassed by the previous decisions, succeeded, each justice in his own way, in sustaining the severance tax as an excise. Little modern support is to be found for this highly restrictive view of the taxing power. Our decisions, we think, commit us against it. It confuses the taxing power with the police power.

Dawson v. Kentucky Distilleries & Warehouse Co., supra, lends the greater support to appellee's contention. The analogy between removing whisky from a bonded warehouse where the law compelled the owner to place it, and removing oil from the ground where nature has placed it, is striking. To place the tax on the act of removal, the court seemed to think was "to levy it because of ownership of the property" and hence "to tax the property." This is not true, however, if we adhere to the formula of Mr. Justice St. Paul, which we think a correct one, as defining a property tax within the meaning of our Constitution.

It should be remembered, too, that Mr. Justice Brandeis, writing for the court, was not discussing a federal question. He was dealing with a state question, unaided by a Kentucky decision on the subject, deciding under the Kentucky Constitution and with liberal admissions by the state's counsel. Considering the manner in which the case was thus presented, the method employed by the court in approaching the subject is explainable and scarcely surprising. Failing to fit the tax into one after another mould of excise taxation, the court finally dropped it into a heap labeled "property taxes."

The state had urged that the tax was one upon "the business of owning and storing * * * spirits in bonded warehouses." The court rejected that view because the tax was evidently applicable to a single or isolated act not amounting to engaging in business. The state undoubtedly weakened its position by tying to that theory. The mere owning and storing of one's own property is scarcely a business, and a tax imposed on that negative act might well be deemed a tax because of ownership. But, however this may be, and

taking a practical view of the matter, severance of oil contemplates its sale and consumption, the first essential step in devoting it to its only purpose and toward realizing its value. If the sale and consumption of it may be taxed, and such tax is not because of ownership, we see no reason why the preliminary act of severance may not also be taxed, and no more reason for considering it a tax because of ownership.

Our Severance Tax Law, as above stated, is an adoption of the Louisiana Severance Tax Act involved in the Louisiana and some of the federal decisions cited, supra; as also appears to be the Arkansas act involved in Floyd v. Miller Lumber Co., supra. Counsel for appellee vigorously urge that the cases from Louisiana are without the force they might otherwise have, due to the fact that an amendment to the Constitution of that state authorizes the particular tax, irrespective of whether it be deemed a property tax or an occupation tax. This much may be conceded, and yet not deny persuasiveness to the Louisiana decisions in their characterization of the tax as an excise.

Nor have the Louisiana state courts been alone in classifying it as an excise. The legislation was before the federal court for the Eastern District of Louisiana in Ohio Oil Co. v. McFarland (D. C.) 28 F.(2d) 441, 444. Speaking of the nature of the tax, Judge Dawkins said: "The tax in question undoubtedly falls within the category of an excise or privilege tax, as distinguished from an ad valorem or property tax. It is exacted for the privilege of pursuing the business of extracting oil from the earth, and is not affected by general constitutional requirements for equality and uniformity."

While this case was reversed in the opinion reported in Ohio Oil Co. v. Conway, 279 U. S. 813, 49 S. Ct. 256, 73 L. Ed. 972, the ground of reversal was a practice question, not touching the matter embraced in the court's remarks just quoted.

The Louisiana act had previously been before the federal District Court for the Eastern District of Louisiana in Union Sulphur Co. v. Reed, 249 F. 172, 174, in which case Judge Foster, touching upon the kind of tax involved, said: "It seems to me the tax imposed by the Louisiana law can be properly classed as a license tax."

We are unconvinced that the tax in question is one upon tangible property, and hence required to be levied ad valorem. We therefore sustain it against the attack here made upon it. We consider it an excise and well within the state's large powers in matters of taxation. 2 Cooley's Constitutional Limitations (8th Ed.) 986; 1 Cooley on Taxation (4th Ed.) § 71, p. 176. If the tax is neither a property tax nor a capitation tax, it may properly be classified as an excise. Id. § 42.

It follows that the judgment of the lower court must be reversed, and the cause remanded, with directions to sustain appellants' demurrer, and for further proceedings in conformity with the views herein expressed.

WATSON, C. J., and HUDSPETH, BICKLEY, and ZINN, JJ., concur.