439 P.2d 702

Raymond BURNS, Plaintiff-Appellant,

v.

STATE of New Mexico, BUREAU OF REV-
ENUE, INCOME TAX DIVISION, Vi-
cente Ojinaga, Acting Director, Defendants-
Appellees.

James B. HERT, Plaintiff-Appellant,

v.

STATE of New Mexico, BUREAU OF REV-
ENUE, INCOME TAX DIVISION, How-
ard Downing, Acting Director, Defendants-
Appellees.

Nos. 8453, 8454.

Supreme Court of New Mexico.

April 8, 1968.

Stephenson, Campbell & Olmsted, James
B. Alley, Jr., Santa Fe, for appellants.

Boston E. Witt, Atty. Gen., Edward R.
Pearson, Asst. Atty. Gen., Santa Fe, for
appellees.

OPINION

CARMODY, Justice.

Two separate actions were brought by
residents of Texas, challenging the juris-
diction of the State to levy an income tax
on wages paid to civilian personnel em-
ployed by the federal government at White
Sands Missile Range in New Mexico. The
trial court rendered judgment in favor of
the State in both cases and, on appeal, the
cases were consolidated for the purpose
of decision.

The appeal presents two questions: (1) Whether the State of New Mexico has taxing jurisdiction over the federal area involved, and (2) whether the state income tax law is in violation of the New Mexico constitution as exceeding constitutional limitations.

On February 12, 1941, the New Mexico legislature ceded jurisdiction to the United States of the property here involved, reserving only the right to serve civil and criminal process (Ch. 8, 1941 Sess.Laws). Prior to the cession of jurisdiction, on October 9, 1940, the Congress passed what is termed as the "Buck Act" (4 U.S.C. §§ 104–110). Appellants argue that the Buck Act does not apply to them, because the legislature did not reserve taxing jurisdiction. The Buck Act provides:

"(a) No person shall be relieved from liability for any income tax levied by any State, or by any duly constituted taxing authority therein, having jurisdiction to levy such a tax, by reason of his residing within a Federal area or receiving income from transactions occurring or services performed in such area; and such State or taxing authority shall have full jurisdiction and power to levy and collect such tax in any Federal area within such State to the same extent and with the same effect as though such area was not a Federal area.

"(b) The provisions of subsection (a) shall be applicable only with respect to income or receipts received after December 31, 1940." (4 U.S.C. § 106)

Appellants attribute to the legislature an awareness of the Buck Act's effect, urging that the intentional cession of exclusive jurisdiction, except for service of process, was an express rejection of taxing jurisdiction.

Opposed to the appellants' position, appellees reason that the Buck Act had prospective effect and applies equally to cessions made before and after its passage. In this connection, it is urged that for the New Mexico legislature to expressly re-serve taxing jurisdiction would have been an idle gesture, because § 110(e) by its very definition gives states taxing jurisdiction in *all* federal areas, whether reserved or not.

"(e) The term 'Federal area' means any lands or premises held or acquired by or for the use of the United States or any department, establishment, or agency of the United States; and any Federal area, or any part thereof, which is located within the exterior boundaries of any State, shall be deemed to be a Federal area located within such State."

■ There is no question but that cession of jurisdiction to the United States deprives a state of jurisdiction in the absence of special federal legislation. Standard Oil Co. v. People of State of California (1934), 291 U.S. 242, 54 S.Ct. 381, 78 L.Ed. 775; International Business Machines Corporation v. Vaughn (Fla.1957), 98 So.2d 747; Arlington Hotel Co. v. Fant, 1929, 278 U.S. 439, 49 S.Ct. 227, 73 L.Ed. 447; Howard v. Commissioners of Sinking Fund, 1953, 344 U.S. 624, 73 S. Ct. 465, 97 L.Ed. 617; Humble Pipe Line Co. v. Waggonner, 1964, 376 U.S. 369, 84 S.Ct. 857, 11 L.Ed.2d 782. However, when special legislation exists, as it does here, it appears to us that the opposite conclusion is inescapable. The question, therefore, becomes whether the Buck Act is self-executing, applicable in the instant case in spite of the fact that the cession took place after the passage of the federal act. Although there are no decisions of this court directly in point, at least two are persuasive and shed some light on the question.

In Arledge v. Mabry, 1948, 52 N.M. 303, 197 P.2d 884, the court was concerned with voter qualifications at Los Alamos, New Mexico. It was there held that because of the vesting of exclusive jurisdiction in the federal government, Los Alamos was, in effect, not in New Mexico, and that therefore residents of Los Alamos did not come within the qualifications required of voters. In the course of the opinion, the

effect of certain state taxes being levied against Los Alamos residents and its bearing on jurisdiction was considered. The opinion acknowledged the Buck Act as authorizing the levy of these taxes, although recognizing that only through a recession of jurisdiction could such powers exist in the State. This portion of the opinion is particularly persuasive in light of the fact that the condemnation proceedings whereby the part of Los Alamos, with which the court was concerned, was acquired by the federal government in 1943—this, of course, was subsequent to the passage of the Buck Act.

In McKee, General Contractor, Inc. v. Bureau of Revenue, 1957, 63 N. M. 185, 315 P.2d 832, it was urged that the State lacked authority to collect certain use taxes in spite of the existence of the Buck Act, thereby again raising the question of the taxing power of the State. In that case, we impliedly accepted the State's contention that the Buck Act was self-executing requiring no affirmative act of acceptance. Accord, State v. Pearson Construction Co., 1957, 236 Ind. 602, 141 N.E.2d 448. Ordinarily, it is true that cession and/or recession of jurisdiction by one sovereignty to another requires an acceptance to render it effective, Yellowstone Park Transportation Co. v. Gallatin Co. (9th Cir. 1929), 31 F.2d 644, cert. denied 280 U.S. 555, 50 S.Ct. 16, 74 L.Ed. 611; Silas Mason Co. v. Tax Comm'n, 1937, 302 U.S. 186, 58 S.Ct. 233, 82 L.Ed. 187; Kiker v. City of Philadelphia, 1943, 346 Pa. 624, 31 A.2d 289, cert. denied 320 U.S. 741, 64 S.Ct. 41, 88 L.Ed. 439. Nevertheless, acceptance is presumed, absent the showing of a contrary intention, Silas Mason Co. v. Tax Comm'n, supra; Kiker v. City of Philadelphia, supra. We certainly will not presume an intention on the part of the legislature to cede its taxing power in the absence of a clear showing to the contrary. See, McKee v. Bureau of Revenue, supra. In our view, the Buck Act must be accorded prospective operation; therefore, silence in the act ceding

jurisdiction is not a clear indication of the intention to surrender the power to tax. It follows, therefore, that the State has jurisdiction to levy the tax in question against the appellants.

We now proceed to appellants' attack on the judgments on the constitutional basis. In essence, it is urged that the income tax levies a tax upon personal property within the meaning of art. VIII, § 2, of the New Mexico constitution and is in excess of the rates allowed therein. The section provides as follows:

"Taxes levied upon real or personal property for state revenue shall not exceed four mills annually on each dollar of the assessed valuation thereon except for the support of the educational, penal and charitable institutions of the state, payment of the state debt and interest thereon; and the total annual tax levy upon such property for all state purposes exclusive of necessary levies for the state debt shall not exceed ten mills; Provided, however, that taxes levied upon real or personal tangible property for all purposes, except special levies on specific classes of property and except necessary levies for public debt, shall not exceed twenty mills annually on each dollar of the assessed valuation thereof, but laws may be passed authorizing additional taxes to be levied outside of such limitation when approved by at least a majority of the electors of the taxing district voting on such proposition."

The whole argument is whether or not income is property, in the sense above used. In this connection, there is no question but that the power to tax is inherent and may be exercised "without let or hindrance, except in so far as limited by the Constitution." See, Lujan v. Triangle Oil Co., 1934, 38 N.M. 543, 37 P.2d 797; and Asplund v. Alarid, 1923, 29 N.M. 129, 219 P. 786.

We have not before had occasion to directly consider the problem involved, although in State v. Gomez, 1929, 34 N.M. 250, 280 P. 251, we held that a succession

or inheritance tax "is not a tax upon tangible property" and that its imposition did not violate art. VIII, § 1. Also, in Flynn, Welch & Yates v. State Tax Commission, 1934, 38 N.M. 131, 28 P.2d 889, we, in effect, held that a severance tax was something else than a property tax or a tax "upon tangible property." Also, in State ex rel. Attorney General v. State Tax Commission, 1936, 40 N.M. 299, 58 P.2d 1204, although admittedly dictum, it was pointed out that an income tax is not a tax on tangible property.

In other jurisdictions where the question of classification of income as property has been considered, it has been raised in cases where the graduated income tax, in its entirety, has been attacked as unconstitutional. The question posed in these cases was whether the graduated income tax was consistent with constitutional uniformity clauses. The results of the various opinions disclose a sharp split in authority of which the following are illustrative. Graduated income taxes have been held unconstitutional and income defined as property in the following cases: See, e. g., Eliasberg Bros. Mercantile Co. v. Grimes, 1920, 204 Ala. 492, 86 So. 56, 11 A.L.R. 300; Bachrach v. Nelson, 1932, 349 Ill. 579, 182 N.E. 909; Culliton v. Chase, 1933, 174 Wash. 363, 25 P.2d 81. In other jurisdictions, it has been determined that the uniformity clauses were inapplicable and that income was not property. See, e. g., Ludlow-Saylor Wire Co. v. Wollbrinck, 1918, 275 Mo. 339, 205 S.W. 196; Featherstone v. Norman, 1930, 170 Ga. 370, 153 S.E. 58, 70 A. L.R. 449; Stanley v. Gates, 1929, 179 Ark. 886, 19 S.W.2d 1000; O'Connell v. State Board of Equalization, 1933, 95 Mont. 91, 25 P.2d 114; Diefendorf v. Gallet, 1932, 51 Idaho 619, 10 P.2d 307. Thus the above cases cannot be considered as directly in point with the issue before us, but they are instructive as to the nature of "income" as property.

The cases cited above from Montana and Idaho are particularly persuasive, because the uniformity clauses there involved are comparable to ours, even though we are not concerned with the uniformity clause per se. In Diefendorf, it was determined that an income tax was not a tax on property but rather an excise tax. We specifically acknowledge the fact that Idaho had an unusual constitutional provision, leaving the definition of "property" to statutory interpretation, but nevertheless the decision itself represents an excellent survey of the many decisions on the question and contains a well-reasoned conclusion. The Supreme Court of Montana, in O'Connell, also concluded that income was not property. The court did not determine whether it was an excise tax or not, but said "there are reasons why such a tax might be classed as a property tax, and reasons why it should be classed as an excise. Volumes, in fact libraries, have been written in a vain endeavor to accurately classify the income tax." The court concluded that the legislature intended to adopt an income tax and did not intend that it should be considered as a property tax. We likewise decline to state the exact nature of the tax, but take note of the fact that it has been referred to as a "nonproperty" tax. See, Newhouse, Constitutional Uniformity and Equality in State Taxation, particularly discussion commencing page 689. In this connection, the following quotation from Flynn, Welch & Yates v. State Tax Commission, supra, is pertinent:

> "It is not for the state to fit this tax into some existing and known mould of excise taxation, or fail; it is for appellee [appellants here] to demonstrate it to be a tax on tangible property, or fail."

Appellants strongly rely on Bachrach v. Nelson, supra, and Culliton v. Chase, supra, but we are unable to agree with the reasoning or the result of these decisions. In particular, appellants seem to derive considerable satisfaction from the statement from Culliton to the effect that the overwhelming weigh of authority is in accordance with the Washington decision. We do not believe it is the overwhelming weight

of authority. See, Newhouse, supra, and Annots., 11 A.L.R. 313, 70 A.L.R. 468, 97 A.L.R. 1488. In any event, the cases really are not in point with respect to the problem before us. We would, however, note that the Washington constitution contains what that court termed "a peculiarly forceful constitutional definition," stating that property includes everything capable of ownership, whether real or personal property, and whether tangible or intangible. From this, Washington held that income was necessarily intangible property. If New Mexico had a similar provision, we would probably agree.

 Viewing the constitution of New Mexico, particularly when we consider certain amendments thereto, leads us to the conclusion that income is not property in the constitutional sense as used in art. VIII. Originally, art. VIII, § 1 read:

"The rates of taxation shall be equal and uniform upon all subjects of taxation."

In 1914, this article was amended to read:

"Taxes levied upon tangible property shall be in proportion to the value thereof, and taxes shall be equal and uniform upon subjects of taxation in the same class."

It appears to us that the prior limitation on the power of the legislature to act was, by the amendment, relaxed to the extent that uniformity was required only upon subjects of taxation in the same class. It is important to note the phraseology used in the amendment with respect to "tangible property." To us, it is quite apparent that the utilization of the word "tangible" in § 1 was intentional, thereby distinguishing such property from "intangible property." Similarly, it should be noted that that portion of art. VIII, § 2, supra, containing the proviso, refers only to "real or personal tangible property." We would further take note of the fact that in November of 1967, the voters of New Mexico adopted a further amendment to art. VIII, § 2, and although the amendment has no bearing upon the issue before us, the language referred to above was readopted without change.

In our opinion, the income tax in question is not levied upon real or personal property as these words are used in Art. VIII, § 2, of the New Mexico constitution.

The judgments should be affirmed. It is so ordered.

CHAVEZ, C. J., and NOBLE, MOISE and COMPTON, JJ., concur.