[No. 32750. *En Banc.* December 16, 1954.]

CROWN ZELLERBACH CORPORATION, *Appellant*, v. THE STATE OF WASHINGTON, *Respondent.*[1]

[1]Reported in 278 P. (2d) 305.

*Holman, Mickelwait, Marion, Black & Perkins* and *J. Paul Coie,* for appellant.

*The Attorney General* and *Jennings P. Felix, Assistant,* for respondent.

*Grosscup, Ambler, Stephan & Miller, Abbott & Lant, Mc-Lean & Klingberg, Harry Ellsworth Foster, Eggerman, Rosling & Williams, Evans, McLaren, Lane, Powell & Beeks,*

*Eisenhower, Hunter, Ramsdell & Duncan, Brown & Olson,* and *Weter, Roberts & Shefelman, amici curiae.*

FINLEY, J.—In this proceeding, Crown Zellerbach, a corporation licensed to do business in the state of Washington, claims it is exempt from certain business and occupation taxes upon its extracting and manufacturing activities. A timely petition was filed with the tax commission of the state of Washington by Crown Zellerbach for a hearing relative to the claim for refund of taxes. After a hearing, the commission entered an order denying relief to the corporation. An appeal to the superior court for Thurston county resulted in a judgment against Crown Zellerbach. This appeal followed.

The facts of the case were stipulated in the trial court. The portions pertinent to the issues in this appeal are:

"The plaintiff [Crown Zellerbach] is principally engaged in the business of manufacturing and selling pulp, paper and paper products and operates pulp and paper mills within and without the State of Washington.

". . .

"Plaintiff sells its products manufactured in Washington at wholesale f.o.b. Mill, for delivery to purchasers both within and without the State of Washington. Its transactions during the period at issue, between August 1, 1950, and December 31, 1951, are divisible as follows:

"(a) Sales and Transfers within the State of Washington: . . .

"(b) Total Interstate Sales and Transfers: . . .

"(1) Interstate Transfers Without Sale . . .

"(2) Interstate Sales at Wholesale. During said period, plaintiff manufactured or extracted goods in Washington and sold such goods at wholesale outside of the State of Washington. For the purposes of this action, it is agreed that these sales were in interstate commerce. Plaintiff in its bi-monthly returns reported all such interstate sales under the Wholesaling classification, but deducted such sales from the measure of its total tax, claiming deduction under RCW 82.04.430(6). The State of Washington asserts a Manufacturing and Extracting tax on the local manufacturing and extracting of these products in the amount of $231,-209.04 plus audit interest of $4,467.11, or a total of $235,-676.15. . . .

"Thus, plaintiff contests only the manufacturing or extracting tax assessed on goods manufactured or extracted within this state but sold out of state."

Basically, two questions are presented. The first requires us to construe certain sections of the business and occupation tax statute to determine whether appellant is liable *thereunder* for the disputed taxes or is exempt under an interpretation of the tax statute urged by the taxpayer. The second question involves an inquiry respecting the constitutional validity of the taxes here in contest, and need be considered only if the state prevails on the first question; *i.e.*, if we find that our state statutes impose liability for the tax.

With reference to the first question, the trial court entered its conclusion of law No. I, which reads as follows:

"The imposition of the tax in question for the taxable activity of manufacture was lawful and in accord with the legislative intent to be derived from the applicable law, disregarding administrative rules and interpretation."

On this question of statutory construction, it is necessary to set out several sections of the applicable statute in order to understand the contentions made by the appellant.

RCW 82.04.230: "Tax on extractors. Upon every person engaging within this state in business as an extractor; as to such persons the amount of the tax with respect to such business shall be equal to the value of the products, including byproducts, extracted for sale or for commercial or industrial use, multiplied by the rate of one-quarter of one percent;

"The measure of the tax is the value of the products, including byproducts, so extracted, regardless of the place of sale or the fact that deliveries may be made to points outside the state."

RCW 82.04.240: "Tax on manufacturers. Upon every person except persons taxable under subsection (2) of RCW 82.04.260 [flour manufacturers] engaging within this state in business as a manufacturer; as to such persons the amount of the tax with respect to such business shall be equal to the value of the products, including byproducts, manufactured, multiplied by the rate of one-quarter of one percent.

"The measure of the tax is the value of the products, in-

cluding byproducts, so manufactured regardless of the place of sale or the fact that deliveries may be made to points outside the state."

RCW 82.04.270: "Tax on wholesalers. Upon every person except persons taxable under subsection (1) of RCW 82.04.260 [grain wholesalers] engaging within this state in the business of making sales at wholesale; as to such persons the amount of tax with respect to such business shall be equal to the gross proceeds of sales of such business multiplied by the rate of one-quarter of one percent."

RCW 82.04.440: "Persons taxable on multiple activities. Every person engaged in activities which are within the purview of the provisions of two or more of sections RCW 82.04.230 to 82.04.290, inclusive, shall be taxable under each paragraph applicable to the activities engaged in: *Provided*, That persons taxable under RCW 82.04.250 [retailing] or 82.04.270 [wholesaling] shall not be taxable under RCW 82.04.230 [extracting], 82.04.240 [manufacturing], or subsection (2) of RCW 82.04.260 [flour manufacturing] with respect to extracting or manufacturing of the products so sold, and that persons taxable under RCW 82.04.240 [manufacturing] shall not be taxable under RCW 82.04.230 [extracting] with respect to extracting the ingredients of the products so manufactured."

It is appellant's position that, because it is engaged in the activity of wholesaling, it is consequently a *person taxable* by reason of its wholesaling activity, and is exempt under the proviso of RCW 82.04.440 from taxation respecting its activities of manufacturing and extracting.

█ Before analyzing and discussing the pros and cons of this appeal any further, we shall make an observation that may seem like oversimplification, and perhaps it is. However, in it lies, we think, the crux of this entire matter. The observation is simply this: The legislative purpose, or tax policy, of the above-quoted statutes is to provide for as equitable an imposition of *actual tax liability* as possible in so far as our state business and occupation tax is concerned. Implicit in this policy is the avoidance of an imposition of double or triple tax liability as to particular products. In other words, the policy is to impose *actual liability* for payment of tax only once—on either (a) extracting, or (b)

manufacturing, or (c) wholesaling. Thus, actual liability for the payment of the business and occupation tax is the key to the problem. The corollary of this policy is that actual liability for business and occupation tax *be imposed on at least one activity.*

Appellant's interpretation emphasizes the fact that a technical tax liability is imposed under RCW 82.04.270; that is, that their wholesaling activity in interstate commerce *is taxable.* Appellant claims it is of no consequence that this technical liability is excused—that is, that the corporation escapes actual tax liability for business and occupation tax on their wholesaling activities in interstate commerce under another statutory provision (RCW 82.04.440). Appellant acknowledges it is immune from state tax respecting its wholesaling activities in interstate commerce because of Federal constitutional provisions. Under its theory, appellant would not only be immune from the business and occupation tax regarding its activity involving sales at wholesale in interstate commerce, but would be exempt from any business and occupation tax relative to activities of manufacturing and extracting products "so sold" in interstate commerce. In other words, appellant would pay no business and occupation tax relative to any intrastate activities respecting products sold in interstate commerce. We cannot believe such a result was intended by the legislature in the enactment of the statutory provisions in question.

We will now discuss in more detail the theories advanced by appellant. It is necessary to consider the key words of the proviso in RCW 82.04.440. These words may be italicized for convenience, as follows:

"*Provided,* That *persons taxable* under RCW . . . 82.04.270 [wholesaling activity] *shall not be taxable* under RCW 82.04.230 [extracting activity], 82.04.240 [manufacturing activity], . . . *with respect to extracting or manufacturing of the products so sold,* . . ." (Italics ours.)

■ Appellant first argues that it is a *person taxable* under RCW 82.04.270 because it engages in wholesaling ac-

tivity. It is acknowledged by appellant that its wholesaling activity here in question took place outside the state of Washington and was in tax-free interstate commerce. However, it is argued that this activity *was taxable* under the language of RCW 82.04.270, which makes no distinction between sales within the state and sales outside the state. It is claimed that the interstate character of its sales simply entitles it to a deduction under RCW 82.04.430, which provides:

"In computing tax there may be deducted from the measure of tax the following items:

" . . .

"(6) Amounts derived from business which the state is prohibited from taxing under the Constitution of this state or the Constitution or laws of the United States; . . ."

It is urged that this permissible deduction does not make its activity of wholesaling in interstate commerce any less taxable under the provisions of RCW 82.04.270. In other words, that because it is taxable with respect to its wholesaling activity, it should not be taxable under RCW 82.04-.230 (extracting) and RCW 82.04.240 (manufacturing) "with respect to extracting or manufacturing of the products so sold."

As generally stated above, we do not believe that appellant is a *person taxable* under RCW 82.04.270 (wholesaling activities) in so far as those activities are conducted in interstate commerce. *Taxable* means "subject to taxation;" Black's Law Dictionary (3d ed.) 1706. Appellant is not subject to a tax with respect to its interstate wholesaling activities. Basically, this is because the Federal constitution prohibits the state from taxing such sales. *Freeman v. Hewit*, 329 U. S. 249, 91 L. Ed. 265, 67 S. Ct. 274. Thus, we think, the scope of the immunity from taxation in terms of the provisions of the Federal constitution is not affected by our statute RCW 82.04.430 (6), providing for a deduction from the measure of the tax those "Amounts derived from business which the state is prohibited from taxing under . . . the Constitution or laws of the United States." The statute is, however, an acknowledgment by our legislature that *the*

*activity* of *making interstate sales,* as well as any other activity, within the protection of the Federal constitution may not be taxed by the state. Therefore, appellant's *interstate wholesaling activity* is not taxable under RCW 82.04.270, even though that section makes no distinction between *sales within and sales without the state.*

█ Appellant points out that it does pay *some* tax upon its wholesaling activity: namely, upon its intrastate sales at wholesale. From this it is argued that it is a person "taxable under . . . RCW 82.04.270," and is exempt from taxation *upon all* its extracting and manufacturing activities. This argument requires an examination of the latter portion of the exemptive statute (RCW 82.04.440), providing that persons taxable under wholesaling shall not be taxable under RCW 82.04.230 (extracting) and RCW 82.04-.240 (manufacturing) "with respect to extracting or manufacturing of the products so sold." Thus, the exemption from taxation upon extracting and manufacturing activities is not a blanket exemption, but is limited by the words, "with respect to extracting or manufacturing of the products so sold." The key as to which extracting and manufacturing activities are exempt is contained in the words, "products so sold." If these words refer to all products sold at wholesale by a person who is taxable upon only a portion of his sales at wholesale, then appellant is correct. We cannot believe that such an unreasonable result could have been intended by the legislature in the absence of language clearly indicating such an intent. We think that the natural and obvious meaning of the words, "products so sold," is *products sold at wholesale by persons taxable with respect to the activity of wholesaling such products.* That a taxpayer may be taxable with respect to the wholesaling of product "A" (sold in intrastate commerce) is patently immaterial to the question of whether he is entitled to an exemption on the manufacturing of products "B," "C," or "D" (sold in interstate commerce). .

█ In support of its contentions, appellant has directed our attention to the matter of *deductions for cash discount;*

that is, discounts taken by purchasers of a percentage of the gross sales price because of payment for goods on a cash basis. Appellant correctly asserts that, in a situation where a local manufacturer selling at wholesale to a local buyer takes a deduction for cash discount under RCW 82.04.430 (3), the portion of the gross proceeds deducted is not included in the measure of the wholesaling tax; and yet, that the state does not impose a manufacturing tax on that portion of the gross proceeds deducted. Appellant argues that, because the amount of gross proceeds deducted under the cash discount deduction is not subject to a manufacturing tax, consequently, by analogy, the proceeds from sales at wholesale in interstate commerce should not be subject to the manufacturing tax. This reasoning attempts to treat the tax-free status of interstate sales as an ordinary deduction.

We do not think the analogy is sound. The cash-discount deduction granted for admittedly *taxable* wholesaling activity pertains to the *measure* of the wholesaling tax. The intrastate wholesaling of particular goods is *taxable*, but, in computing the *measure* of the tax, the amount of the cash discount is deducted. On the other hand, the activity of wholesaling particular goods in interstate commerce is simply *nontaxable.*

 We are supported in our conclusion by two additional considerations. In construing a statute of tax exemption which is susceptible of more than one meaning, it is the rule that the statute shall be strictly construed. We said in *Spokane County v. Spokane,* 169 Wash. 355, 13 P. (2d) 1084:

"Taxation is the rule, and exemption is the exception. Where there is an exception, the intention to make one should be expressed in unambiguous terms. *Columbia Irr. Dist. v. Benton County,* 149 Wash. 234, 270 Pac. 813.

" 'Statutes exempting property from taxation must be strictly construed, and it devolves upon those claiming the exemption to clearly show that the property is within the statute. (*People v. Wabash Railway Co.,* 138 Ill. 85 [27 N. E. 694]; *People v. City of Chicago,* 124 id. 636 [17 N. E. 56]; *Bloomington Cemetery Ass'n v. People,* 170 id. 377

[48 N. E. 905]; *Catholic Knights v. Board of Review,* 198 id. 441 [64 N. E. 1104].) All presumptions are against an intention of the State to bind itself by the exemption of property from taxation. Exemptions will be construed strictly and cannot be made by judicial construction to embrace other subjects than those plainly expressed. (*In the Matter of Swigert,* 123 Ill. 267 [14 N. E. 32]; *People v. Seaman's Friend Society, supra* [87 Ill. 246].) The same rule requiring a strict construction of statutes exempting property belonging to private persons or corporations from taxation is applied to municipal corporations also.' *Board of Directors of Stinson Memorial Library v. Board of Review of Union County,* 248 Ill. 590, 94 N. E. 153."

Other sections of the business and occupation tax statute show a legislative intent that extracting and manufacturing taxes apply where sales are made outside the state in interstate commerce. Thus, RCW 82.04.230 and RCW 82.04.240, defining the extracting and manufacturing taxes, each contains a similar paragraph explaining the measure of these taxes. These paragraphs read:

"The measure of the tax is the value of the products, including byproducts, so extracted [manufactured], *regardless of the place of sale or the fact that deliveries may be made to points outside the state.*" (Italics ours.)

If RCW 82.04.440 were construed, as contended for by appellant, so that a manufacturer wholesaling his product outside the state was exempt from extracting and manufacturing taxes, the italicized part of the provision just quoted would be surplusage. We think the express language of the extracting and manufacturing tax sections contemplates the imposition of extracting or manufacturing taxes where sales are made outside the state. This portion of RCW 82.04-.230 and RCW 82.04.240 was enacted by the legislature in 1950 [Laws, 1950, Ex. Ses., chapter 5, § 1 (a) and § 1 (b), p. 7]. In the same bill, the legislature enacted RCW 82.04-.440 [Laws, 1950, Ex. Ses., chapter 5, § 2, p. 9] in its present form with respect to the granting of an exemption to extractors and manufacturers who *taxably* sell at wholesale. These sections must be construed together, if possible, so that no clause or sentence shall be held to be super-

fluous or insignificant. *Public Hospital Dist. No. 2 v. Taxpayers of Public Hospital*, 44 Wn. (2d) 623, 269 P. (2d) 594. The conclusion seems inescapable that the legislature intended that persons engaged in extracting, or manufacturing, or both, who sell their products outside Washington, are to be taxed with respect to either their extracting or manufacturing activities.

Appellant contends that the statute RCW 82.04.440, as we have herein construed it, violates the Federal and Washington constitutions. It is first asserted that the statute violates the commerce clause of the Federal constitution, in that it constitutes a discrimination against interstate commerce. In support of this contention, appellant argues that, as a local manufacturer selling to out-of-state customers in interstate commerce, it is required to pay a tax for the privilege of engaging in manufacturing. A local manufacturer, whose sales are intrastate, can exercise the same privilege—that of manufacturing—without subjection to tax. Appellant concludes that this is a discrimination against interstate commerce, placing interstate commerce at a disadvantage in competition with local trade.

We are unable to observe the competitive disadvantage mentioned by appellant. A manufacturer who sells to persons outside Washington can hardly be in competition with one who sells to buyers within the state. Furthermore, from the standpoint of business expense, and as a purely practical matter in terms of a program envisaging imposition of the business and occupation tax upon only one taxable activity, it may be said that a local manufacturer, selling in intrastate commerce, pays a business and occupation tax upon its wholesaling activity.

But there is a more basic fallacy in appellant's argument. The tax with which we are concerned is a tax on the privilege of manufacturing and extracting. The United States supreme court has repeatedly held that manufacturing is not a part of interstate commerce. In *Utah Power & Light Co. v. Pfost*, 286 U. S. 165, 76 L. Ed. 1038, 52 S. Ct. 548, the supreme court said:

" . . . that commerce does not begin until manufacture is finished, and hence the commerce clause of the Constitution does not prevent the state from exercising exclusive control over the manufacture. *Cornell v. Coyne*, 192 U. S. 418, 428-429. 'Commerce succeds to manufacture, and is not a part of it.' *United States v. E. C. Knight Co.*, 156 U. S. 1, 12."

See, also, *International Harvester Co. v. Evatt*, 329 U. S. 416, 91 L. Ed. 390, 67 S. Ct. 444.

Similarly, the activity of extracting is not in interstate commerce. *Oliver Iron Mining Co. v. Lord*, 262 U. S. 172, 67 L. Ed. 929, 43 S. Ct. 526; *Hope Natural Gas Co. v. Hall*, 274 U. S. 284, 71 L. Ed. 1049, 47 S. Ct. 639.

Appellant next contends that the statute imposing the tax on its extracting and manufacturing activities violates the commerce clause because it is measured by the gross proceeds of sales without any allocation or apportionment of proceeds derived from intrastate activities and proceeds derived from interstate activities. In other words, appellant contends that the measure of the tax includes proceeds attributable to expense incurred relative to such activities as solicitation of sales in interstate commerce and in maintenance of out-of-state offices.

The extracting tax and the manufacturing tax are each measured by the "value of the products," which phrase is defined by RCW 82.04.450:

"The value of products, including byproducts, extracted or manufactured shall be determined by the *gross proceeds derived from the sale* thereof whether such sale is at wholesale or at retail, to which shall be added all subsidies and bonuses received from the purchaser or from any other person with respect to the extraction, manufacture, or sale of such products or byproducts by the seller, . . ." (Italics ours.)

RCW 82.04.070 further defines "gross proceeds of sales," as follows:

" 'Gross proceeds of sales' means the value proceeding or accruing from the sale of tangible personal property and for services rendered, without any deduction on account of the cost of property sold, the cost of materials used, labor costs,

interest, discount paid, delivery costs, taxes, or any other expense whatsoever paid or accrued and without any deduction on account of losses."

Appellant argues from these provisions, as follows:

"Thus, the statutory scheme assures that the local incidence of manufacture is not all that is taxed. There is no attempt to apportion as between the local and out-of-state activity. It is the measure of the tax, rather than subject matter, which violates the constitutional immunity of interstate commerce."

In addition, appellant apparently sugggests that, under the statute, the cost of transportation into interstate commerce of goods extracted or manufactured in Washington would be included in the measure of the tax.

The United States supreme court has on several occasions defined the limitations of the state's power to measure a local-activity tax by proceeds from sales in interstate commerce. That court has held that such a tax must not reach "indiscriminately and without apportionment, the gross compensation for both interstate commerce and intrastate activities." *Adams Mfg. Co. v. Storen*, 304 U. S. 307, 82 L. Ed. 1365, 58 S. Ct. 913, 117 A. L. R. 429.

On the other hand, the court made it clear in *Adams Mfg. Co. v. Storen, supra*, that

"So far as the sale price of the goods sold in interstate commerce includes compensation for a purely intrastate activity, the manufacture of the goods sold, it may be reached for local taxation by a tax on the privilege of manufacturing, *measured by the value of the goods manufactured*, or by other permissible forms of levy upon the intrastate transaction." (Italics ours.)

In *Hope Natural Gas Co. v. Hall, supra*, the supreme court held that a state may impose a tax upon the value at the well of natural gas produced within its limits, although the gas is transported into other states for consumption. In *International Harvester Co. v. Evatt, supra*, it was said (p. 420):

"It has long been established that a state can tax the business of manufacturing. The fact that it chose to measure the amount of such a tax by the value of the goods the factory

has produced, whether of the current or a past year, does not transform the tax on manufacturing to something else. [Citing cases.]"

With these controlling cases in mind, we believe that the legislature has made adequate provision for apportionment of income derived from intrastate and interstate activities. RCW 82.04.460 provides:

"Any person rendering services and maintaining places of business both within and without this state shall, for the purpose of computing tax liability under this chapter, apportion to this state that portion of his gross income which is derived from services rendered within this state. Where such apportionment cannot be accurately made by separate accounting methods, the taxpayer shall apportion to this state that proportion of his total income which the cost of doing business within the state bears to the total cost of doing business both within and without the state."

With respect to the cost of transporting goods manufactured or extracted in Washington into interstate commerce, where such costs are within the protection of the commerce clause, a Washington taxpayer is entitled to take advantage of the deduction provided by RCW 82.04.430 (6)—amounts derived from business which the state is prohibited from taxing under the constitution of the United States.

We believe that mere citation of these sections is sufficient answer to appellant's bare assertion that "the statutory scheme *assures* that the local incidence of manufacture is not all that it taxed." In the absence of any claim by appellant, either for a deduction of amounts derived from out-of-state activities or for apportionment of income derived from interstate and intrastate activities, it is unnecessary for us to consider further its claim for total exemption based upon the alleged unconstitutionality of the pertinent sections of the taxing statute. Appellant has made no showing that the tax as assessed by the tax commission has, in any particular, included within its measure proceeds derived from out-of-state activities. There are no facts contained either in appellant's complaint (on appeal to the superior court) or in the stipulation of facts which would indicate that the tax was computed upon an improper basis.

■■■ A taxpayer has the burden of proving that a state tax, as applied, fails to achieve a fair apportionment. *Hope Natural Gas Co. v. Hall, supra; International Harvester Co. v. Evatt, supra; Capitol Greyhound Lines v. Brice,* 339 U. S. 542, 94 L. Ed. 1053, 70 S. Ct. 806; *Norton Co. v. Department of Revenue,* 340 U. S. 534, 95 L. Ed. 517, 71 S. Ct. 377.

*Gwin, White & Prince v. Henneford,* 305 U. S. 434, 83 L. Ed. 272, 59 S. Ct. 325, cited by appellant to sustain its position, is not in point. There, the United States supreme court held that Washington's business and occupation tax, laid upon the taxpayer's activity of marketing fruit in interstate commerce as an agent for a growers' federation, constituted an unconstitutional burden on interstate commerce. The *Gwin, White & Prince* case, *supra,* was distinguished in *Department of Treasury v. Ingram-Richardson Mfg. Co.,* 313 U. S. 252, 85 L. Ed. 1313, 61 S. Ct. 866, where the taxpayer (in the enameling business) processed metal parts shipped to its factory in Indiana from other states, and then shipped the processed articles back to its out-of-state customers. The taxpayer attacked the state tax imposed upon its activity, asserting that the measure of the tax included the solicitation of orders by the taxpayer's agents, the execution of contracts in other states, interstate communications by mail, telephone and telegraph, and, also, the transportation by the taxpayer of the metal parts from and to places in other states. The United States supreme court, in reversing the decision of the circuit court of appeals which had upheld the contention of the taxpayer, said:

"The court thought that the reasoning of our opinion in *Gwin, White & Prince v. Henneford,* 305 U. S. 434, applied. That case, however, presented a different situation. The business there was that of a marketing agent for a federation of fruit growers and the state tax was measured by the gross receipts of the taxpayer from the business of marketing fruit shipped from the taxing State to the places of sale in other States and foreign countries. We found that the entire service for which the compensation was paid was 'in aid of the shipment and sale of merchandise in that commerce' (interstate and foreign) and hence the service was held to be within the protection of the commerce clause. *Id.,* p. 437.

Here, on the contrary, the entire service was in aid of the enameling business conducted within the State. The transportation of the metal parts to and from Indiana were but incident to that intrastate business, as was the circulation of appellants' magazine in States other than the taxing State in the *Western Live Stock* case, *supra*, p. 254 [303 U. S. 250]'.

"Moreover, if the transportation of the metal parts were regarded as an item of service for which a deduction should have been allowed, *we think that it was the duty of respondent, in view of the fact that it was conducting an intrastate business clearly subject to the tax, to claim the deduction and show the amount which should be allowed. It does not appear that respondent did either. Respondent made its claim for a total exemption from the tax upon the ground that it was laid upon interstate sales, a contention which it has failed to support.*

"The State contends, citing provisions of the taxing act, that the legislature of Indiana contemplated that the taxpayer would reflect in the tax return any deductions claimed, making a separation between taxable and non-taxable items, and that the tax return itself provided a method for claiming any deductions to which the taxpayer thought itself entitled. Respondent insists that the Act did not provide a method of apportionment. In the absence of an effort on the part of respondent to present a claim for deduction and to have the state authorities pass upon the question of deduction or apportionment, as distinguished from its claim for a total exemption, we are not called upon to attempt to resolve the question of state law." (Italics ours.)

We believe that this case answers all questions raised by appellant relative to apportionment.

 Appellant finally contends that, because local manufacturers who sell in interstate commerce are subjected to the manufacturing tax, while local manufacturers who sell in intrastate commerce are not, such a classification among taxpayers is artificial, arbitrary, unreasonable, and capricious, and, therefore, violates the equal privileges and immunities clause of Art. I, § 12, of the Washington constitution, and the equal protection clause of the fourteenth amendment of the Federal constitution. It is argued that this classification is based solely on the ultimate destination of the product, and that this is not a reasonable classification.

It appears to us that the classification is based not upon the ultimate destination of the products, as such, but rather upon the tax status of the activity of wholesaling the products. Indeed, the exemption section, RCW 82.04.440, is phrased in terms of such tax status. The classification, on its face, appears to have the soundest of policy reasons to support it, namely, the avoidance of double taxation. In *Drury The Tailor v. Jenner,* 12 Wn. (2d) 508, 122 P. (2d) 493, we held that a classification of retailers which treated differently for tax purposes those who manufactured their products within the state and those who sold goods which were manufactured outside the state was a proper classification. In *State Board of Tax Com'rs v. Jackson,* 283 U. S. 527, 75 L. Ed. 1248, 51 S. Ct. 540, 73 A. L. R. 1464, the United States supreme court quoted from *Brown-Forman Co. v. Kentucky,* 217 U. S. 563, 54 L. Ed. 883, 30 S. Ct. 578, as follows:

" 'A very wide discretion must be conceded to the legislative power of the State in the classification of trades, callings, businesses or occupations which may be subjected to special forms of regulation or taxation through an excise or license tax. If the selection or classification is neither capricious nor arbitrary, and rests upon some reasonable consideration of difference or policy, there is no denial of the equal protection of the law.' "

In *Oliver Iron Mining Co. v. Lord, supra,* the court considered classifications between persons engaged in iron mining. One of the classifications was based, in part, upon the amount of local tax paid by the extractor. The amount of the local taxes varied between counties permitting greater or lesser deductions from the state tax. The classification was upheld as not being an arbitrary or unreasonable discrimination.

We conclude that the classification made by RCW 82.04-.440 is reasonable, and hence does not contravene either the state or Federal constitutions.

The judgment of the trial court is affirmed.

ALL CONCUR.