IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| GROUP HEALTH COOPERATIVE, a Washington nonprofit corporation; and GROUP HEALTH OPTIONS, INC., a Washington corporation, | )<br>)  No. 79091-9-I<br>)<br>)  DIVISION ONE<br>) |
| Appellants, | )<br>) |
| v. | )  PUBLISHED OPINION |
| STATE OF WASHINGTON, DEPARTMENT OF REVENUE, | )<br>)  FILED: April 1, 2019<br>) |
| Respondent. | )<br>) |

SMITH, J. — Group Health Cooperative (GHC) and Group Health Options Inc. (GHO) appeal the summary dismissal of their complaint for a refund of business and occupation (B&O) taxes paid on certain premiums they received from or on behalf of their members for providing Medicare Advantage (MA) plans.[1] The premiums at issue are described in 42 U.S.C. § 1395w-24(g) and consist of "payments to Medicare+Choice organizations under [42 U.S.C.] section 1395w-23 [and] premiums paid to such organizations under [part C of Title 42, chapter 7, subchapter XVIII of the United States Code]" (collectively MA premiums). We hold that although MA premiums are subject to B&O tax under

---

[1] Effective February 15, 2017, GHC's name was changed to Kaiser Foundation Health Plan of Washington and GHO's name was changed to Kaiser Foundation Health Plan of Washington Options Inc. We refer to these entities by their former names for consistency with the proceedings below and the parties' briefs.

state law, federal law preempts the imposition of B&O taxes on MA premiums. Therefore, we reverse and remand to the trial court to determine the refund amount.

## FACTS

GHC and its wholly owned subsidiary, GHO (collectively Group Health), provide health care coverage to members in Washington and Idaho. Group Health's health care plans include MA health benefit plans, which Group Health has contracted with the Centers for Medicare & Medicaid Services (CMS) to provide. CMS is a division of the Department of Health and Human Services, a federal agency. In exchange for providing MA plans to eligible members, Group Health receives MA premiums from CMS and from Group Health members.

In 2012, GHO requested a determination from the Washington State Department of Revenue (Department) as to whether Washington State B&O tax applies to MA premiums. The Department responded that B&O tax does apply, and Group Health paid B&O tax based on MA premiums recorded as income from 2010 through February 2016.

In May 2016, Group Health filed this lawsuit for a refund of those B&O tax payments. It then moved for summary judgment, arguing that (1) MA premiums are exempt from B&O tax under RCW 82.04.322 and (2) federal law preempts the Department's imposition of B&O tax on MA premiums. The trial court disagreed with both arguments and denied Group Health's motion. Because no genuine issues of material fact remained in dispute, the court entered summary

2

judgment in favor of the Department. Group Health appeals.

ANALYSIS

*Applicability of B&O Taxes to MA Premiums*

Group Health argues that the trial court erred by concluding that MA premiums are not exempt from B&O taxes under RCW 82.04.322. We disagree.

The meaning of a statute is a question of law that this court reviews de novo. Durant v. State Farm Mut. Auto Ins. Co., 191 Wn.2d 1, 8, 419 P.3d 400 (2018). Our "fundamental objective in determining what a statute means is to ascertain and carry out the legislature's intent." Durant, 191 Wn.2d at 8. "If the statute's meaning is plain on its face, then courts must give effect to its plain meaning as an expression of what the legislature intended." Durant, 191 Wn.2d at 8. To discern a statute's plain meaning, we consider the text of the provision in question, taking into account the statutory scheme as a whole. Dep't of Ecology v. Campbell & Gwinn, L.L.C., 146 Wn.2d 1, 11, 43 P.3d 4 (2002). "We may use a dictionary to discern the plain meaning of an undefined statutory term." Nissen v. Pierce County, 183 Wn.2d 863, 881, 357 P.3d 45 (2015). If, after conducting this inquiry, the statute is "susceptible to more than one reasonable meaning, the statute is ambiguous and it is appropriate to resort to aids to construction, including legislative history." Campbell & Gwinn, 146 Wn.2d at 12. Because courts presume that taxes are valid, a taxpayer that claims immunity from a tax bears the burden of establishing an exemption. Avnet, Inc. v. Dep't of Revenue, 187 Wn.2d 44, 49-50, 384 P.3d 571 (2016).

Here, Group Health argues that MA premiums are exempt from B&O

taxes under RCW 82.04.322, which provides: "[B&O tax] does not apply to any health maintenance organization, health care service contractor, or certified health plan in respect to premiums or prepayments that are taxable under RCW 48.14.0201." The Department does not dispute that GHC and GHO are, respectively, a health maintenance organization and a health care service contractor under this statute. The only dispute is whether MA premiums are "taxable" under RCW 48.14.0201 and therefore exempt from B&O tax.

The B&O tax statutes do not define "taxable." Thus, we may look to the dictionary to discern its plain meaning. Nissen, 183 Wn.2d at 881. The dictionary defines "taxable" as "[s]ubject to taxation." BLACK'S LAW DICTIONARY 1688 (10th ed. 2014). For the following reasons, we conclude that MA premiums are not "subject to taxation" under RCW 48.14.0201 and therefore are not exempt from B&O tax under RCW 82.04.322.

First, MA premiums are expressly exempt from taxation under RCW 48.14.0201, which is the state premium tax statute. At all times relevant hereto, that statute has required each "taxpayer" to pay a tax equal to two percent of all health care premiums and prepayments received by the taxpayer. RCW 48.14.0201(2); see also former RCW 48.14.0201(2) (2009). But that statute also has, at all relevant times, provided the following exemption:

> (6) The taxes imposed in this section do not apply to:
> (a) Amounts received by any taxpayer from the United States or any instrumentality thereof as prepayments for health care services provided under Title XVIII (medicare) of the federal social security act.

RCW 48.14.0201(6)(a). Group Health does not dispute that GHO and GHC are

4

"taxpayers" for purposes of the premium tax statute, nor does it dispute that MA premiums are expressly exempted from premium taxes under subsection 6(a) of that statute. Because MA premiums are expressly exempted from premium taxes, MA premiums are not subject to taxation under RCW 48.14.0201.

Second, federal law expressly prohibits the Department from imposing premium taxes on MA premiums. Specifically, 42 U.S.C. § 1395w-24(g) provides: "No State may impose a premium tax or similar tax with respect to payments to Medicare+Choice organizations under section 1395w-23 of this title or premiums paid to such organizations under this part."[2] Although the parties disagree about whether this statute prohibits the Department from imposing B&O taxes on MA premiums, they agree that it expressly prohibits the Department from imposing a *premium tax* on MA premiums. Accordingly, even without the exemption expressly provided under RCW 48.14.0201(6)(a), MA premiums are not subject to taxation under RCW 48.14.0201 as a result of federal preemption.

In short, under the plain language of RCW 82.04.322, MA premiums are not "taxable" under RCW 48.14.0201 because they are not subject to taxation under that statute. Therefore, Group Health has not met its burden to establish that MA premiums are exempt from B&O taxes.

Group Health argues that we should interpret "taxable" to mean "capable of being taxed," rather than "subject to taxation." It argues that this case is factually distinguishable from Crown Zellerbach Corp. v. State, 45 Wn.2d 749, 278 P.2d 305 (1954), a B&O tax case in which our Supreme Court looked to the

---

[2] It is undisputed that the term "Medicare+Choice" includes MA.

5

dictionary to define "taxable" as "'subject to taxation'." <u>Crown Zellerbach</u>, 45 Wn.2d at 755 (quoting BLACK'S LAW DICTIONARY 1706 (3d ed. 1933)). But our construction of the term "taxable" does not depend on <u>Crown Zellerbach</u>. Indeed, even <u>Crown Zellerbach</u>'s definition of "taxable" was not dependent on the facts of that case—the Supreme Court simply looked to the dictionary, as we do here. Therefore, it is irrelevant here that <u>Crown Zellerbach</u> may be distinguishable on its facts.

Furthermore, even if we were to interpret "taxable" as "capable of being taxed," Group Health's argument that MA premiums are "taxable" under RCW 48.14.0201 would still fail. MA premiums are neither "subject to taxation" nor "capable of being taxed" under RCW 48.14.0201 because, as discussed, federal law prohibits the imposition of premium taxes on MA premiums, and MA premiums are, under the premium tax statute itself, expressly exempt from premium tax.

Group Health next observes that the exemption under RCW 82.04.322 for premiums taxable under the premium tax statute and the premium tax statute's express exemption for MA premiums were both enacted at the same time, as part of the Health Care Reform Act. <u>See</u> LAWS OF 1993, ch. 492, §§ 301 (<u>codified at</u> RCW 48.14.0201), 303 (<u>codified at</u> RCW 82.04.322). It then argues that the Department's position "fails to explain" why the legislature would exempt MA premiums from the premium tax just to make them subject to the B&O tax. This argument is unpersuasive because Group Health bears the burden of establishing that an exemption applies. <u>Avnet</u>, 187 Wn.2d at 49-50. But Group

Health's argument attempts to shift that burden to the Department to explain why the legislature chose the language it did. Furthermore, and as the Department points out, Group Health's argument "presumes the answer," i.e., that the legislature intended to exempt MA premiums from all taxes. But Group Health has pointed to no expression of a legislative intent to make MA premiums completely immune from taxation.

To that end, Group Health cites Columbia Riverkeeper v. Port of Vancouver USA, 188 Wn.2d 421, 395 P.3d 1031 (2017), and Citizens Alliance for Property Rights Legal Fund v. San Juan County, 184 Wn.2d 428, 359 P.3d 753 (2015), to suggest that the statutory scheme reveals such an intent. But Columbia Riverkeeper and Citizens Alliance both involved the Open Public Meetings Act of 1971 (OPMA), which declares that its provisions are "remedial and shall be liberally construed." RCW 42.30.910. The OPMA also contains an express statement of legislative intent that our Supreme Court has characterized as "some of the strongest language used in any legislation." Equitable Shipyards, Inc. v. State, 93 Wn.2d 465, 482, 611 P.2d 396 (1980); see also RCW 42.30.010 ("It is the intent of this chapter that . . . actions [of public agencies] be taken openly and that their deliberations be conducted openly."). Here, by contrast, Group Health points to no statement in the Health Care Reform Act or in the B&O tax chapter reflecting a clear legislative intent to exempt MA premiums from B&O taxes. The absence of any such statement is particularly notable given that it is well established that "the legislative purpose behind the B&O tax scheme is to tax virtually all business activity in the state."

7

*Impecoven v. Dep't of Revenue*, 120 Wn.2d 357, 363, 841 P.2d 752 (1992).

Moreover, Group Health's argument ignores the most obvious explanation for the exemption provided in RCW 82.04.322—to avoid double taxation of premiums. If not for RCW 82.04.322, premiums received by insurers would be subject to both the premium tax *and* the B&O tax. Therefore, contrary to Group Health's assertions, adopting the Department's proffered interpretation of RCW 82.04.322 does not lead to "absurd results."

Group Health next points out that in another B&O tax exemption statute, the legislature used "strikingly different language" than it used in RCW 82.04.322. Specifically, RCW 82.04.320 provides: "[B&O tax] shall not apply to any person in respect to insurance business *upon which a tax based on gross premiums is paid to the state*." (Emphasis added.) Group Health argues that because the legislature used the phrase "upon which a tax based on gross premiums is paid to the state" to describe the scope of the exemption in RCW 82.04.320, then the term "taxable" in RCW 82.04.322 must mean something else. But the fact that "taxable" means something other than that taxes have been paid to the state does not help Group Health here. Specifically, the difference between the language used in RCW 82.04.320 and RCW 82.04.322 is that the exemption in RCW 82.04.320 apparently depends on whether premium taxes have been *paid*, whereas the exemption in RCW 82.04.322 depends on whether premium taxes *can be assessed* under RCW 48.14.0201. And as discussed above, MA premiums are *not* subject to assessment under RCW 48.14.0201. The difference in language between RCW 82.04.320 and RCW 82.04.322 is not determinative.

8

As a final matter, Group Health argues that legislative history supports its argument that the MA premiums are exempt from B&O taxes. But "[w]e need not utilize interpretive tools such as legislative history when statutory language is unambiguous." Spokane County v. Dep't of Fish & Wildlife, 192 Wn.2d 453, 458, 430 P.3d 655 (2018). RCW 82.04.322 is not ambiguous. As discussed, MA premiums are not exempt from B&O taxes under a plain language reading of that statute. Furthermore, even if RCW 82.04.322 were ambiguous, this court would be required to strictly construe that ambiguity against Group Health. Avnet, 187 Wn.2d at 50 ("If there is ambiguity in a provision providing an exemption or deduction, the court must strictly construe the provision against the taxpayer."). Therefore, we do not consult legislative history here.

*Federal Preemption*

Group Health argues that even if MA premiums are not exempt from B&O tax under RCW 82.04.322, federal law preempts the Department from imposing B&O taxes on MA premiums. We agree.

This court reviews questions of federal preemption de novo. McCurry v. Chevy Chase Bank, FSB, 169 Wn.2d 96, 100, 233 P.3d 861 (2010). "Whether federal law preempts state law depends upon whether that was the intent of Congress." McCurry, 169 Wn.2d at 100. To determine Congress's intent, we first look to the relevant statute's plain language. Kitsap County Consol. Hous. Auth. v. Henry-Levingston, 196 Wn. App. 688, 701, 385 P.3d 188 (2016). We may consult a dictionary to discern the meaning of undefined statutory terms in a federal statute. Kitsap County Consol. Hous. Auth., 196 Wn. App. at 701.

Here, the federal statute at issue is 42 U.S.C. § 1395w-24(g), which was enacted as part of the Balanced Budget Act of 1997 (BBA). See Balanced Budget Act of 1997, Pub. L. No. 105-33 § 1854(g), 111 Stat. 251, 312. That statute provides that "[n]o State may impose a premium tax *or similar tax* with respect to [MA premiums]." 42 U.S.C. § 1395w-24(g) (emphasis added). We conclude that the plain language of 42 U.S.C. § 1395w-24(g) preempts the Department from imposing B&O taxes on MA premiums.

The BBA did not define "similar tax" for purposes of preemption. See Medicare Program; Establishment of the Medicare+Choice Program, 63 Fed. Reg. 34,968, 35,014 (June 26, 1998) (observing that "similar tax" is not specifically defined). But the first dictionary definition for "similar" is "having characteristics in common." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2120 (2002). The B&O tax has characteristics in common with a premium tax. Like a premium tax, the B&O tax is assessed against premium revenue. Indeed, CMS acknowledged that this was a defining characteristic when it observed that the BBA did not define "premium tax" or "similar tax," "*other than by reference to the applicability of such a tax to revenue received from the Federal Government for health plan enrollees.*" 63 Fed. Reg. at 35,014 (June 26, 1998) (emphasis added). And, like a premium tax, the B&O tax is assessed on a gross basis. See 42 C.F.R. § 422.404(b) (clarifying that certain taxes assessed on a *net* basis are not preempted). Therefore, under the plain language of 42 U.S.C. § 1395w-24(g), the B&O tax is "similar" to a premium tax and is preempted by that statute.

The Department contends that the B&O tax is not "similar" to a premium

tax by pointing to a handful of ways in which the administration and collection of the B&O tax differs from the premium tax. The Department asserts that "[m]ost significantly, the B&O tax applies to virtually all business activities; the premium tax applies only to the business of insurance." But as discussed, the B&O tax shares defining characteristics with a premium tax—namely, it is assessed against premium revenue and on a gross basis. We are not persuaded by the Department's argument that B&O tax is not similar to a premium tax merely because B&O tax applies to noninsurance businesses and because the state has chosen to administer the B&O tax differently.

Group Health Cooperative v. City of Seattle, 146 Wn. App. 80, 189 P.3d 216 (2008), is instructive on this point. There, GHC challenged the city of Seattle's imposition of B&O taxes assessed against payments GHC received from the Federal Employees Health Benefits (FEHB) fund (FEHBF). Group Health Coop., 146 Wn. App. at 83-84. A federal statute prohibits states from imposing any "tax, fee, or other monetary payment . . . directly or indirectly, on a carrier" with respect to any payment made from the FEBHF. 5 U.S.C. § 8909(f)(1). The city argued that it was not taxing GHC in its role as a "carrier," as prohibited by federal law, but that it was instead taxing GHC in its role as a health care *provider*, which is not prohibited by the federal statute. Group Health Coop., 146 Wn. App. at 95. We rejected that argument, reasoning that the city could not escape federal preemption "by unilaterally recharacterizing [GHC] as a health care 'provider' rather than a carrier." Group Health Coop., 146 Wn. App. at 95. We also observed that the city was, by its own admission, taxing FEHB premium revenue,

11

even though the city tried to recast that revenue as payments for medical services. Group Health Coop., 146 Wn. App. at 93. Here, like the city in Group Health Cooperative, the Department does not dispute that it is taxing premium revenue on a gross basis. These characteristics are dispositive here. Thus, like the city, the Department cannot escape federal preemption by characterizing the B&O tax as "dissimilar" to a premium tax simply because it is applicable to noninsurance businesses and because the state has unilaterally decided to administer the B&O tax differently.

The Department argues that Group Health Cooperative is distinguishable from this case because the language in the FEHB statute's preemption provision and the language in 42 U.S.C. § 1395w-24(g) "differ[ ] sharply." But CMS itself has observed that the scope of state tax preemption for MA premiums was intended to mirror the scope of state tax preemption for FEHB premium revenue. 63 Fed. Reg. at 35,014 (June 26, 1998) (observing that a Senate Finance Committee report summarizing the BBA stated that "'[t]he current law on federal preemption of state premium taxes or fees on Federal payments from the FEHB[ Program] to health plans will be extended to [MA premiums].'"). More importantly, B&O tax is, as discussed, "similar" to a premium tax under the plain language of 42 U.S.C. § 1395w-24(g). In other words, the outcome here is not dictated by Group Health Cooperative or the FEHB statute, but by a plain language reading of 42 U.S.C. § 1395w-24(g).

Additionally, CMS's own regulations confirm that B&O tax is preempted under 42 U.S.C. § 1395w-24(g). For example, B&O taxes do not fit within the

12

savings clause that CMS promulgated to clarify the scope of the prohibition on state taxation of MA premiums. That clause provides:

> Nothing in this section shall be construed to exempt any MA organization from taxes, fees, or other monetary assessments *related to the net income or profit that accrues to, or is realized by, the organization from business conducted under this part,* if that tax, fee, or payment is applicable to a broad range of business activity.

42 C.F.R. § 422.404(b) (emphasis added). In other words, to fit within the savings clause, a state tax must be assessed based on net income or profit. But the Department does not dispute that B&O tax is not assessed against net income or profit. Rather, it is assessed on a gross receipts basis. See Avnet, 187 Wn.2d at 50. Therefore, B&O tax is not saved from federal preemption by the savings clause.

The Department asserts that the savings clause is illustrative, not exclusive. It argues that "merely because [CMS] clarified that net income taxes are not included within the preemption provision does not mean that broadly applicable gross receipts taxes are 'similar taxes' to premium taxes." But when CMS first published the interim final version of the savings clause, it explained that the savings clause was intended to "clarify the scope of what constitutes a *prohibited* premium tax." 63 Fed. Reg. at 35,014 (June 26, 1998) (emphasis added). If, as the Department asserts, the savings clause is merely illustrative, it does little to clarify what is *prohibited* under 42 U.S.C. § 1395w-24(g).

As a final matter, the Department relies on a number of cases to argue that this court should be "reluctant" to conclude that federal law preempts B&O tax. But none of these cases are persuasive here. In National Private Truck

13

Council, Inc. v. Oklahoma Tax Commission, 515 U.S. 582, 115 S. Ct. 2351, 132 L. Ed. 2d 509 (1995), the Court considered whether state courts are required to award declaratory and injunctive relief under § 1983 in state tax cases. Nat'l Private Truck, 515 U.S. at 588. And in California State Board of Equalization v. Sierra Summit, Inc., 490 U.S. 844, 109 S. Ct. 2228, 104 L. Ed. 2d 910 (1989), the Court considered whether immunity from state taxation could be inferred, by negative implication, from a statute that in fact confirmed that bankruptcy estates are subject to state tax. Cal. Bd. of Equalization, 490 U.S. at 852. But neither National Private Truck nor California Board of Equalization involved the construction of a federal statute expressly aimed at preempting state taxes. Therefore, the Department's reliance on these cases is misplaced.

The Department's reliance on cases citing National Private Truck and California Board of Equalization is similarly misplaced. In Washington Trucking Associations v. Employment Security Department, 188 Wn.2d 198, 393 P.3d 761 (2017), the Washington State Supreme Court relied in part on National Private Truck merely to confirm that state courts are barred from awarding damages under § 1983 in state tax cases when there is an adequate state law remedy. Washington Trucking Assocs., 188 Wn.2d at 211. Thus, like National Private Truck, Washington Trucking is not persuasive here. And in Florida Department of Revenue v. Piccadilly Cafeterias, Inc., 554 U.S. 33, 128 S. Ct. 2326, 171 L. Ed. 2d 203 (2008), the Court applied a canon of construction articulated in California Board of Equalization only after assuming, for purposes of argument, that the federal statute at issue was ambiguous. Florida Dep't of Revenue, 554

14

U.S. at 41, 47. But 42 U.S.C. § 1395w-24(g) is not ambiguous. As discussed above, the plain language of that statute preempts B&O taxes because they are similar to premium taxes. Therefore, <u>Florida Department of Revenue</u> is also unpersuasive.

We reverse and remand to the trial court to determine the refund amount.

_Smith, J._

WE CONCUR:

_Andrus, J._

_Appelwick, C.J._